Betty Amos DEE, Plaintiff,

v.

Willard H. AUKERMAN, et al., Defendants.

No. C-3-84-144.

United States District Court, S.D. Ohio, W.D.

Jan. 7, 1986.

John R. Ensley, Dayton, Ohio, Joseph Patrick Burke, Kettering, Ohio, Jack Harrison, Dayton, Ohio, for plaintiff.

James Frantz, Eaton, Ohio, Gilbert N. Henderson, Dayton, Ohio, for defendants.

DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION; DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM CONDITIONALLY OVERRULED; PLAINTIFF TO FILE A MORE DEFINITE STATEMENT BY JANUARY 17, 1986; DEFENDANTS' MOTION FOR SANCTIONS AND REASONABLE EXPENSES OVERRULED

RICE, District Judge.

Plaintiff has filed a Complaint seeking declaratory, injunctive and other relief against Defendants for the failure of A. Lucille Aukerman, deceased, to name Plaintiff as a joint inventor in a United States patent which Ms. Aukerman obtained in 1969. In response to Plaintiff's Complaint,

Defendants have filed a Motion to Dismiss (Doc. # 3), citing various defects in this Court's jurisdiction as well as in Plaintiff's cause of action itself. The Court will address these issues in turn.

### (1) *Subject Matter Jurisdiction.*

Plaintiff founds subject matter jurisdiction over her Complaint upon 28 U.S.C. § 1338(a), which grants the District Courts original jurisdiction over patent cases, and 35 U.S.C. § 256. The latter section, entitled "Correction of Named Inventor," provides as follows:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

Defendants' contention is that § 256 permits a court, during the course of litigation as to the validity of a patent, to order correction of the patent on notice and hearing of all parties concerned. Defendants do not believe, on the other hand, in the absence of such patent litigation, that § 256 confers jurisdiction upon this Court to correct innocent errors of misjoinder or nonjoinder in a patent application.

This Court has found two cases in which, apparently, § 256 was found to confer original jurisdiction to resolve an inventorship dispute involving an innocent error of misjoinder or nonjoinder. *Mechmetals Corp. v. Telex Computer Products, Inc.*, 518 F.Supp. 243 (C.D.Calif.1981); *modified,* 709 F.2d 1287 (9th Cir.1983); *Aetna-Standard Engineering Company v. Rowland*, 223 U.S.P.Q. 557, 560 (Penn.Court Common Pleas 1983). Unfortunately, in neither case is the scope of § 256 analyzed. In *Mechmetals*, subject matter jurisdiction was predicated upon 28 U.S.C. § 1338(a), and the court decided on the merits plaintiff's claim that its employee was properly named as a joint inventor. There was no diversity jurisdiction available in that case. 709 F.2d at 1290 n. 4.

As for the two cases cited by Defendants, the Court finds that they, too, cannot be considered definitive with respect to subject matter jurisdiction herein. The Ninth Circuit in *Bemis v. Chevron Research Company*, 599 F.2d 910 (9th Cir. 1979) did not reach the issue herein and explained that § 256 cannot be used to substitute one sole inventor for another, which is not the aim of Plaintiff herein. While not reaching the issue central to this case, in *Iowa State University Research Foundation v. Sperry Rand Corporation*, 444 F.2d 406 (4th Cir.1971), the Fourth Circuit emphasized the broad remedial purposes of Congress in enacting § 256 in 1952, and refused to require that all parties apply to the Court for correction under § 256. *Id.* at 410. Donald Chisum, in his treatise on patents, concludes that neither of these appellate opinions excludes the use of § 256 for an independent correction action, without the pendency of a patent infringement suit, when there is a good faith dispute as to inventorship between joint inventors. D. Chisum, Patents § 2.04[7], at 2–55 through 2–58 (1985).

■ Unlike the typical case in which a court is asked to imply a private remedy from a particular federal statute, § 256 specifically provides for judicial correction of a patent by means of adding an omitted inventor or deleting a named inventor. The issue here, of course, is whether § 256, when taken with 28 U.S.C. § 1335, is sufficient in itself, in the absence of patent litigation as to the validity of a patent or whether same has been infringed, to confer jurisdiction over an inventorship dispute.

Nonetheless, the factors which this Court would consider in implying a private remedy from any statute which does not expressly provide for it may still prove helpful in the Court's analysis in the instant case. Those factors, as set forward in *Howard v. Pierce*, 738 F.2d 722, 724 (6th Cir.1984), are as follows: The plaintiff's membership in a protected class, the legislative intent to provide a private remedy, and a consistency of that private remedy with the "underlying purposes of the legislative scheme." *Id.* at 724. The fourth factor, whether the area is one of traditional concern to the states, is not at issue herein, as patents are largely a federal province.

The legislative history of § 256 reveals that, at the time of this enactment in 1952, the patent statutes had made no provision for mistakes in the determination of persons named as inventors after the issuance of a patent. The legislative history contained in the Senate and House reports is virtually the same:

> Section 256 is a new section in the law that is correlated with § 116 [35 U.S.C. § 116] and relates to a mistake in joining a person as a joint inventor. Very often two or three people make an invention together. They must apply as joint inventors. If they make a mistake in determining who are the true inventors, they do so at their peril. This provision permits a bona fide mistake in joining a person as inventor or in failing to join a person as an inventor to be corrected.

S.Rep. No. 1979, 82nd Cong., 2nd Sess. at 7 (1952). Section 116, which was also added in 1952, made provisions for the first time for corrections of innocent mistakes with respect to joint inventorship in patent applications before the commissioner. Both § 116 and § 256 were amended in 1982 in order to "enlarge the possibilities for corrections of misnamed inventors" in patent applications and in issued patents. H.Rep. No. 542, 97th Cong., 2nd Sess. at p. 9–10, *reprinted in* 1982 Code Cong. and Administrative News 765, 773–74. The result of this amendment was the authorization for correction in cases where the person origi-nally named as an inventor was in fact not the inventor of the subject matter contained in the application or in the issued patent. *Id.*

It would appear from the legislative history as though Plaintiff herein is a member of the class sought to be protected by § 256, in that she claims that she is a joint inventor of a patent device who is not named in the issued patent. In adding §§ 116 and 256 in 1952 and then in enlarging the potential categories of relevant inventorship disputes in 1982, Congress evidently felt that innocent errors and omissions were suitable for correction either before the commissioner or, in some cases, before the court. The legislative history does not indicate, however, whether or not § 256 was intended to confer original jurisdiction in this Court to resolve *solely* an inventorship dispute.

However scanty, the legislative history of § 256 does indicate that a construction of § 256, under which original jurisdiction is found for adjudication of a joint inventorship dispute, would be consistent with the legislative scheme. The addition of the statute, as well as § 116, in 1952, and its enlargement in breadth in 1982, seems to indicate a congressional interest in resolving inadvertent mistakes with respect to joint inventorship, and with respect to the addition of joint inventors after the issuance of a patent. While § 256 does not expressly provide for such an entry into court, as does 35 U.S.C. §§ 145 and 146, cited to this Court by Defendants, nonetheless the statute does make reference to correction by the district court, while cryptically omitting precisely when such a court may take jurisdiction. As noted by T.J. Federico, Examiner in Chief of the Patent Office in 1952 and a drafter of § 256, the pertinent portion of § 256

> states that the misjoinder or nonjoinder of joint inventors shall not invalidate a patent if a mistake is one that can be corrected under the section, that is, arose by error and without deceptive intention, and gives a court authority to order correction.

Commentary, 35 U.S.C.A. at 1, 50 (1952). This Court sees no persuasive reason that § 256 should not be read as conferring subject matter jurisdiction over this case, providing that Plaintiff is capable of articulating certain facts for the record as ordered by Section 3, *infra*, of this opinion.

### (2) *Exhaustion of Remedies.*

■ Defendants argue that Plaintiff's action should be dismissed due to her failure to exhaust her remedies before the Patent Office. In 37 C.F.R. § 1.324 and § 1.20(b), certain administrative procedures for correction before the commissioner are set forth. It is noteworthy, however, that the consent of *all* the parties is required in order that this procedure be invoked. Section 256, on the other hand, requires only notice and a hearing in order for a District Court to order correction of a patent. In *Iowa State*, 444 F.2d at 406, the Fourth Circuit refused to require the consent of all parties in order for correction to be ordered under § 256, noting expressly the literal terms of the statute and the broad remedial purposes of § 256. Accordingly, Defendants' position that this case should be dismissed for Plaintiff's failure to exhaust her administrative remedies is not well taken, as obviously the administrative procedure set forth in the federal regulations requires a consensus not obtainable by Plaintiff.

### (3) *Omission Without Deceptive Intention.*

■ Having concluded in Part 1 of this opinion that Plaintiff is not precluded from seeking relief in this Court solely for a joint inventorship dispute, this Court's attention necessarily focuses on that portion of § 256 which provides for correction in an issued patent only when "such error arose without any deceptive intention" on the part of the named inventor. Plaintiff's Complaint seems to allege willful or wrongful conduct on the part of Willard Aukerman's decedent, A. Lucille Aukerman. In her Memorandum Contra, Plaintiff appears to waffle, explaining that she knows only that she was omitted from the patent, and that she is uncertain as to whether said

omission was inadvertent or wrongful. (Doc. # 5). This is simply insufficient for purposes of this action. As held by the Ninth Circuit in *Bemis*, § 256 is limited in effect and can only be used as a vehicle when an omission or other mistake was due to inadvertent error. 599 F.2d at 912.

Accordingly, in order to proceed in this action, Plaintiff must file, by Friday, January 17, 1986, a definite statement setting forth precisely the specific facts relevant to her claim against the Defendants herein. Only if her claim is one of erroneous omission can this Court find itself with jurisdiction to further proceed in this action. That portion of Defendants' motion which seeks to dismiss the instant case under Fed.R. Civ.P. 12(b)(6) is thus conditionally overruled, subject to the filing of a more definite statement by Plaintiff. Upon any such filing by Plaintiff, Defendants are free to attack said statement should they feel that the nature of the conduct alleged is not the type of innocent error required in order for correction to be available under § 256.

### (4) *Defendants' Motion for Expenses and Attorneys Fees Under Fed.R. Civ.P. 11.*

In her Complaint, Plaintiff asks for two and a half million dollars in damages, an accounting, one half of royalties paid to Defendants, and an injunction to restrain Defendant Snugli from paying royalties to Defendants. The Complaint also seeks attorneys' fees. Defendants have moved for reimbursement of their expenses in responding to the Complaint, as well as for attorneys' fees, on the basis of 35 U.S.C. § 262, which provides as follows:

> In the absence of any agreement to the contrary, each of the owners of a patent may make, use or sell the patented invention without the consent of and without accounting to the other owners.

Defendants allege that the damages and accounting sought by Plaintiff are precluded by the statute, and thus that the relief sought by Plaintiff is violative of Rule 11 in that it is without foundation in the law. Plaintiff has cited in return certain rulings

made by former District Court Judge Duncan in a case which was settled prior to the entry of judgment on the merits. In her Memorandum Contra, Plaintiff's position appears to be that she is entitled to damages for that period of time when she was not named as a joint inventor of the patented device at issue. As a result, during that period, she was unable to make any licensing agreements. To quote from Plaintiff's Memorandum, she was "deprived of this valuable opportunity." (Plaintiff's Memorandum Contra, at 4).

This Court has considerable difficulty in squaring Plaintiff's theory of deprivation with the authority provided in § 256 for this Court to correct errors arising "without any deceptive intention." As pointed out by Defendants, under a tortious theory of recovery, Plaintiff would have to show intentional and unjustified conduct in order to recover for the deprivation of a legally protected property interest. Restatement (2nd) of Torts, § 871. In his treaty on equity, McClintock explains that an equitable duty to account arises when one person has a fiduciary duty with respect to the money or property or another. McClintock, Equity, Ch. 20, § 201 at 538 (1948). The "restitution" of profits made by one person through the use of something "belonging" to another is usually available only where the person profiting has done so through a breach of fiduciary duty, or where that person is a conscious wrongdoer. Dobbs, Remedies, Ch. 4, § 4.5 at 273–74.

The Court is uncertain, as mentioned *supra*, as to how Plaintiff can allege a set of facts which would both bring her within the scope of § 256 and entitle her to this type of accounting or damages for lost profits. While the Court does not believe that Plaintiff's request rises to the level that sanctions are required, obviously Plaintiff's statement, which is to be filed in accordance with Section 3 of this opinion, must also touch upon the nature of the relationship between Plaintiff and A. Lucille Aukerman, deceased. At that time, not only will the compatibility of Plaintiff's claim and § 256 become apparent, but it

should also become more apparent whether there is any means for Plaintiff to continue to pursue the monetary relief sought in her Complaint. Accordingly, Defendants' Motion for Sanctions and Reasonable Expenses is overruled.

(5) *Summary.*

In conclusion, this Court has overruled that portion of Defendants' Motion which alleged a lack of subject matter jurisdiction over Plaintiff's Complaint. That portion of Defendants' Motion which seeks to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) is conditionally overruled, with Plaintiff ordered to file a more definite statement, as outlined in Part 3 of this opinion, by Friday, January 17, 1986. Defendants' Motion to Dismiss for Failure to Exhaust Remedies is overruled, as is their Motion for Expenses and Sanctions under Rule 11.