**David D. STARK, M.D., Plaintiff,**

v.

**ADVANCED MAGNETICS, INC., Jerome Goldstein, Ernest V. Groman, and Lee Josephson, Defendants.**

Civ. A. No. 92–12157–WGY.

United States District Court, D. Massachusetts.

July 24, 1995.

Henry C. Dinger, Goodwin, Proctor & Hoar, Boston, MA, for plaintiff David D. Stark, M.D.

Ian Crawford, J. Owen Todd, Todd & Weld, David S. Godkin, Eric S. Sarner, Richard S. Sanders, Testa, Hurwitz & Thibeault, Boston, MA, for defendant Advanced Magnetics, Inc., Jerome Goldstein, Ernest V. Groman, Lee Josephson.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

Dr. David D. Stark ("Stark") brings this action against Advanced Magnetics, Inc. and several of its officers, Jerome Goldstein, Ernest V. Groman, and Lee Josephson (collectively referred to here as "Advanced") to establish his rights as the inventor of technology utilized in the diagnosis of cancer and other diseases by magnetic resonance imaging ("MRI"). Stark alleges that Advanced, as the assignee of the named inventors, wrongfully prosecuted and obtained patents covering inventions as to which Stark claims sole or joint inventorship without naming him as inventor. Stark seeks correction of inventorship pursuant to 35 U.S.C.A. § 256 (West 1984) ("section 256") and damages and injunctive relief under principles of Massachusetts tort and contract law and under Mass. Gen.Laws Ann. ch. 93A (West 1984).

### I. BACKGROUND

Stark, a physician specializing in radiology, collaborated with Advanced in various studies that he claims relate to the patented subject matter. Stark alleges that, in the course of these studies, he invented and disclosed to Advanced his techniques of using superparamagnetic, biodegradable materials as MRI contrast agents. Without naming him as inventor, Advanced prosecuted and obtained six patents covering the inventions as to which Stark claims he is a sole or joint inventor. Advanced allegedly concealed from Stark that the imaging techniques Stark invented were covered by its patents, and assured Stark that any patent it obtained would contain only chemical methods of synthesizing particles proprietary to Advanced. Stark asserts that the findings, images, and data he provided Advanced in reliance on their assurances are included in the patent applications submitted by Advanced and published in the patents.

### II. PROCEDURAL POSTURE

On September 3, 1992, Stark filed his complaint in this Court. Advanced promptly moved to dismiss the action. On January 6, 1993, the Court denied the motion to dismiss as to the inventorship and contract claims but reserved ruling on the tort claims, considering whether they were barred by statute of limitations. Prior to the Court's ruling on the last claims, Advanced moved for summary judgment on the entire complaint (the "original motion") on two grounds. First, they argued that by alleging that Advanced procured the patents through fraud, Stark effectively removed himself from the remedial scope of section 256. Second, Advanced argued that by failing to act diligently in seeking to correct inventorship, Stark's section 256 claims were barred.

On April 16, 1993, this Court granted the motion to dismiss certain of the state law tort claims on the ground that they were time-barred; granted summary judgment on the section 256 claim based on Advanced's second argument—that Stark had failed diligently to seek correction of inventorship;[1] and declined subject matter jurisdiction over the remaining state law claims.

Stark then filed an action in the Massachusetts Superior Court sitting in and for the County of Middlesex. In August 1994, Justice McHugh of that court granted the motion of Advanced for partial summary judgment on the tort and Chapter 93A claims on

---

1. Because this Court granted summary judgment on the section 256 claim based on failure diligently to seek correction, the Court never ruled on the first argument put forward by Advanced that section 256 was inapposite. See Affidavit of Richard S. Sanders, Ex. A (Tr. of Mtn. H'rg. [April 16, 1993] ).

the ground that they were barred by the applicable statute of limitation.

Meanwhile, Stark appealed this Court's ruling to the United States Court of Appeals for the Federal Circuit. In their opposing brief, the defendants-appellees advanced both of the arguments raised below in this Court, despite the fact that in granting summary judgment this Court had relied only on the second argument. On July 1, 1994, the Federal Circuit vacated the judgment of this Court, holding that the statute does not require that the alleged inventor exercise diligence in bringing legal action to correct a patent that has already issued. *See Stark v. Advanced Magnetics, Inc.,* 29 F.3d 1570 (Fed.Cir.1994) ("*Stark I*"). Like this Court, the Federal Circuit did not address Advanced's alternative argument. Instead, "[t]he cause [was] remanded for determination of the merits of the asserted inventorship claims." *Id.* at 1577. The matter is again before this Court, this time on the motion of Advanced for partial summary judgment on the ground it has raised from the outset but which neither this Court nor the Federal Circuit has ever directly addressed, viz. that Stark's allegations of fraud preclude relief under section 256.

### *III. DISCUSSION*

The patent statute requires that a patent application be filed in the name of the inventors or inventor, see 35 U.S.C.A. §§ 111, 115, 116 (West 1984 & Supp.1993), and permits the patent to be amended where an inventor's name was mistakenly added or left out of the original application. Section 116 authorizes correction of inventorship in pending applications, and section 256 applies to issued patents. Section 256 states:

> Whenever *through error* a person is named in an issued patent as the inventor, or *through error* an inventor is not named in an issued patent *and such error arose without any deceptive intention on his part,* the Commissioner may, on application of all parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

35 U.S.C.A. § 256 (West 1984) (emphasis added). Before the enactment of this section, incorrect inventorship of an issued patent required the invalidation of the entire patent. *See* ROBERT L. HARMON, PATENTS AND THE FEDERAL CIRCUIT 208 (1985). Section 256 provides a simpler (and, presumably, less costly) remedy for bona fide mistakes in inventorship. *See Stark I,* 29 F.3d at 1573.

In its new motion for summary judgment, Advanced once again proffers its argument that section 256 is inapplicable in the circumstances of this case and therefore is entitled to judgment as matter of law. Advanced contends that Stark may not petition this court for amendment under 256—which allows amendment only where the wrong inventor was named through error—because Stark's complaint alleges that Advanced procured the patents at issue through *fraud.* Thus, according to Advanced, if Stark is to obtain relief at all, he must attempt to have the patents invalidated in their entirety.

Stark responds that in reversing this Court's grant of summary judgment the Federal Circuit implicitly addressed and rejected this argument. Thus, this Court must allow him to bring this case under section 256 because the "law of the case" doctrine bars the Court from reconsidering the issue.

### A. Law of the Case Doctrine

The law of the case doctrine provides that a decision on an issue of law made at one stage of the case governs the issue during subsequent stages of the litigation except in unusual circumstances. *Commercial Union Ins. Co. v. Walbrook Ins. Co.,* 41 F.3d 764, 769 (1st Cir.1994); *Abbadessa v. Moore Business Forms, Inc.,* 987 F.2d 18, 22 (1st Cir.1993). Moreover, the mandate rule, a specific application of the law of the case doctrine, **requires** this Court to comply with

the command of an appellate court on remand. *See Exxon Corp. v. United States*, 931 F.2d 874, 877 n. 7 (Fed.Cir.1991) (quoting 1B J. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.404[10] at 172–74 [2d ed. 1988] ) ("When the remand is general ... the district court is free to decide anything not foreclosed by the mandate.... In the case of a remand for further proceedings, the mandate constitutes the law of the case only on such issues of law as were actually considered and decided by the appellate court, or necessarily to be inferred from the disposition on appeal"); *see also Commercial Union*, 41 F.3d at 770 (same); *United States v. Bell*, 988 F.2d 247, 251 (1st Cir.1993); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453, 459 (1st Cir.1992). On remand, this Court "must implement both the letter and the spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces." *United States v. Connell*, 6 F.3d 27, 30 (1st Cir.1993) (citation omitted). Thus, the applicability of the law of the case doctrine here necessarily depends upon this Court's interpretation of the decision of the Federal Circuit in *Stark I.*

■ In this case, the Federal Circuit *explicitly* stated that on remand this Court must determine "the merits of the inventorship claims." *Stark I,* 29 F.3d at 1577. That Advanced is not entitled to judgment as matter of law on the 256 claim is implicit in and necessary to the Federal Circuit's decision to vacate and remand for further proceedings. Advanced addressed the issue in its brief on appeal and thus presented the Federal Circuit with an alternative ground for affirming this Court's decision. If this Court's grant of summary judgment had been correct, although based upon an erroneous ground, the Federal Circuit would nonetheless have affirmed if the decision were sustainable on the basis of the deceptive intention argument. *See United States v. New York Tel. Co.*, 434 U.S. 159, 166 n. 8, 98 S.Ct. 364, 369 n. 8, 54

L.Ed.2d 376 (1977) (appealed decision must be affirmed if sustainable on any ground supported by the record); *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157–58, 82 L.Ed. 224 (1937) (same); *Knight v. Mills*, 836 F.2d 659, 661 n. 3 (1st Cir.1987) (proper for appellate court to affirm correct decision even when based on inappropriate ground); *Wells Cargo, Inc. v. Wells Cargo, Inc.*, 606 F.2d 961, 964 n. 4 (C.C.P.A.1979) (same). As the Federal Circuit would have obviated the need for further proceedings had it considered the argument of Advanced to be a valid alternative ground for upholding a grant of summary judgment, this Court must decline to revisit, at this stage of the litigation, the deceptive intention issue.[2] The mandate rule thus bars the Court from revisiting the argument, previously rejected in this litigation, that Stark removed himself from the remedial scope of section 256 by alleging deceptive intention on the part of Advanced. Accordingly, this Court follows the Federal Circuit's mandate and denies the motion of Advanced for partial summary judgment.

## B. Section 256

■ Advanced contends that correction of inventorship under section 256 requires lack of deceptive intention on the part of *initial applicants* (here, Advanced), and possibly the omitted inventor as well. Stark, on the other hand, argues that only the actual inventor need be innocent of deceptive intention. Although, as explained above, this Court is bound to allow Stark to proceed to trial and to argue his case under section 256, the Court rejects the interpretation of this provision advanced by Stark and holds that, unless Stark make a prior election, the jury will have to decide which of the mutually exclusive claims it wishes to pursue to verdict. This section sets out the reasoning for the Court's approach.

1. *Judicial Decisions*—District court decisions interpreting section 256 uniformly require lack of deceptive intention on the part

---

**2.** Of course, the mandate rule is subject to "a modicum of residual flexibility," but the requisite exceptional circumstances are not present in this case. In the absence of any change in controlling legal authority, new evidence, or blatant error in the decision that will result in manifest injustice, this Court declines to depart from the Federal Circuit's mandate. *See United States v. Bell,* 988 F.2d 247, 251 (1st Cir.1993) (citing *United States v. Rivera–Martinez,* 931 F.2d 148, 151 [1st Cir.], *cert. denied,* 502 U.S. 862, 112 S.Ct. 184, 116 L.Ed.2d 145 [1991]).

of the person originally named in a patent as a prerequisite for correction of inventorship. *See University of Colorado Foundation, Inc. v. American Cyanamid,* 880 F.Supp. 1387, 1399 (D.Colo., 1995) (section 256 inapplicable where plaintiffs seek correction based on alleged fraud and deception of defendant); *McMurray v. Harwood,* 870 F.Supp. 917, 919–20 (E.D.Wis.1994) (section 256 limited to correction of innocent errors and does not permit the replacement of fraudulently named inventor with that of the innocent inventor); *General Elec. Co. v. Brandon,* 25 U.S.P.Q.2d 1885, 1887, 1992 WL 394933 (N.D.N.Y.1992) (at a minimum there must be a lack of deceptive intention on the part of the person named as the inventor); *Rodgard Corp. v. Miner Enter., Inc.,* No. Civ.–84–397E, 1990 WL 159048, at *2 (W.D.N.Y. Oct. 17, 1990) (improper to correct patent where alleged failure to name proper inventor is asserted as intentional); *Dee v. Aukerman,* 625 F.Supp. 1427, 1430 (S.D.Ohio 1986) (section 256 limited to omission or mistake due to inadvertent error).

The district courts in *McMurray* and *General Electric* relied upon decisions that antedated the 1982 amendment to section 256, reasoning that the deceptive intention requirement was not changed. *McMurray,* 870 F.Supp. at 919 & n. 2 (amendment did not overturn prior [and subsequent] authority which uniformly holds that § 256 does not permit correction where the named person is accused of deception or fraud) (citing *Bemis v. Chevron Research Co.,* 599 F.2d 910, 912 [9th Cir.], *cert. denied,* 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 378 [1979] [*per curiam* ] [improper to substitute inventors on a patent sounding in conspiracy and fraud] ); *General Elec.,* 25 U.S.P.Q.2d at 1887 (deceptive intention language was not changed in the amendment) (citing *Rival Mfg. Co. v. Dazey Prod. Co.,* 358 F.Supp. 91, 101–102 [W.D.Mo.1973] ).

Both the *University of Colorado* and the *McMurray* decisions considered—and rejected—the notion that the decision of the Federal Circuit in *Stark I* spoke to the "without deceptive intent" requirement of section 256. *University of Colorado,* 880 F.Supp. at 1399; *McMurray,* 870 F.Supp. at 921. This Court disagrees due to its familiarity with the arguments advanced in the underlying litigation. Nevertheless, for the purposes of this discussion, the Court adopts the remark in *University of Colorado* that "neither the Supreme Court nor the Federal Circuit has squarely addressed whether the words 'without deceptive intent' in § 256 refer to the patentee, the omitted inventor, or both." 870 F.Supp. at 1398. There is, therefore, no controlling authority, although the distinguished district courts that have considered the matter uniformly reject the cause of action sought to be asserted here. Thus, this Court considers the language of the statute in light of the purposes the statute was intended to serve. *See Chapman v. Houston Welfare Rights Org.,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).

2. *Statutory Construction*—Section 256 applies "[w]henever *through error* ... an inventor is not named in an issued patent." This language clearly indicates that the person omitting the inventor (i.e., the applicant) must have made a mistake. The section also says, however, that amendment is possible where "an inventor is not named in an issued patent *and such error arose without any deceptive intention on his part.*" This language strongly suggests that the actual inventor also needs to lack deceptive intention. Thus, this Court interprets the statute as requiring that *both* the applicant (here, Advanced) and the actual inventor (here, Stark) must have made an honest mistake and must be innocent of fraud.

Stark, however,—relying on the statute's legislative history [3]—argues that section 256

**3.** The legislative history of the 1982 amendments to 35 U.S.C. §§ 116 and 256 strongly suggests that Congress intended to permit correction of inventorship, without regard to the conduct of the named inventor, as long as there was no deceptive intention on the part of the *true inventor. See, e.g.,* H.R.Rep. No. 97–542, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.Code Cong.

& Admin.News 765, 773 ("[t]he Commissioner must be assured of the presence of innocent error, without deceptive intention on the part of the true inventor or inventors, before permitting a substitution of a true inventor's name"). The rules of the Patent and Trademark Office give effect to this interpretation and provide for correction of inventorship if "the correct inventor or

requires only the absence of deceptive intent on the part of the actual inventor (here, Stark), regardless of the intentions of the named inventor (here, Advanced).[4] *See* Memorandum in Opposition to Defendants' Motion for Partial Summary Judgement at 7. This Court rejects Stark's argument. Indeed, it would torture the express legislative language beyond recognition—and would, in effect, drop the "through error" phrase from the statute—were section 256 to be construed to apply solely to situations where the named inventor is alleged intentionally to have omitted the true inventor from the patent application. This Court will not so distort the statute. *See NLRB v. Health Care & Retirement Corp. of Amer.,* — U.S. —, —, 114 S.Ct. 1778, 1784, 128 L.Ed.2d 586 (1994) (legislative history and policy arguments may not be employed where their use would distort the plain meaning of the statute); *United States v. Charles George Trucking Co.,* 823 F.2d 685, 688 (1st Cir.1987) (courts should not probe legislative history unless application of the statute's literal words would lead to an absurd result).

■ Thus, this Court holds that the statute on its face requires that before a patent may be amended, it must be found that the true inventor was left off the application as a result of a mistake and not as a result of deception, on the part of *either* the named inventor or the actual inventor.

In the instant case, Stark tries to have it both ways—he argues both fraud and mistake. Nevertheless, like this opinion, his complaint may be read in the alternative. On the one hand, he alleges conversion, theft of trade secrets, fraud, and unfair and deceptive conduct on the part of Advanced. On the other, with respect to the section 256 claims, he eschews any allegations of intentional misconduct by Advanced directed toward the Patent Office. This Court need express no opinion as to the adequacy of the complaint because matters have now progressed to the summary judgment stage.

While it thus appears that Stark will eventually have to chose which horse he seeks to ride to verdict, at present his section 256 claim remains viable and the further proceedings mandated by the Federal Circuit must take place. For these reasons, the motion for partial summary judgment on the section 256 claim is DENIED.

## IV. CERTIFICATION

The Court thus adopts a middle course which satisfies none of the litigants. It accepts Stark's argument that the law of the case doctrine prohibits the Court from revisiting the 256 issue through summary judgment, and allows Stark to proceed to trial. The Court also holds, however, that the section 256 claim and the claims against Advanced for fraud are mutually exclusive, and thus either Stark through election or the jury through deliberation will have to choose which of these mutually exclusive claims to analyze to verdict.

Given this equivocal outcome and faced by an impending series of extraordinarily complex and costly expert depositions, all parties urge this Court to certify the accuracy of its section 256 analysis to the Federal Circuit for definitive resolution pursuant to 28 U.S.C.A. § 1292(b) (West 1995). This Court readily agrees, finding expressly that the order denying the motion for partial summary judgment involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal therefrom may materially advance the ultimate termination of this litigation. *Id.*

Further proceedings in this Court, however, are not stayed and all case management and trial deadlines are to be met. If there is to be a stay, it must come from the Federal Circuit once it has evaluated the advisability of intervening in this litigation at this stage.

---

inventors were not named through error without deceptive intention on the part of the actual inventor or inventors." 37 C.F.R. § 1.324 (1994).

**4.** Furthermore, Stark argues that he has not alleged that Advanced intended to deceive the Patent Office, only that Advanced attempted to deceive Stark, and thus the claim falls within the scope of 256.