**Donald G. HEDEN, Plaintiff,**

v.

**Dale HILL, Robert Adam, Joseph Nowiczewski, Alumatech Corporation, D. Arlon Groves, Ultra Lite Manufacturing, Inc., Everlite, Inc. and GHB Patent, Inc., Defendants.**

No. H–94–cv–4095.

United States District Court,
S.D. Texas,
Houston Division.

June 28, 1996.

Randall O. Sorrels–Abraham, Watkins, Nichols, Ballard & Friend, Houston, TX, for Plaintiff.

Paul J. McConnell, III, DeLange & Hudspeth, L.L.P., Houston, TX, for Defendants Adam, Nowickzewski, and Ultra Lite Manufacturing, Inc.

Glenn Donald Phillips, Hearne & Phillips, L.L.P., Kilgore, TX, Hill, GHB Patent, Inc., Everlite, Inc., and Alumatech Corp., for Defendants.

D. Arlon Groves, D. Arlon Groves, P.C., Houston, TX, pro se.

## ORDER OF ADOPTION

HITTNER, District Judge.

This court has reviewed the Memorandum and Recommendation of the United States Magistrate Judge signed March 8, 1996. The court finds the Memorandum and Recommendation should be, and the same is hereby, adopted as the court's Memorandum and Order. Accordingly, it is

ORDERED that the Motion of Defendant Groves to Dismiss Count One of Plaintiff's Petition is GRANTED IN PART and DENIED IN PART.

With respect to Heden's request for Groves to be directed to remove defendant Dale Hill's name from all papers in the application for the patent to ensure that the issued patent will fully attribute Heden as sole inventor, Groves's motion to dismiss is GRANTED. Groves's motion to dismiss is DENIED with regard to Heden's request for a declaratory judgment that he is the sole inventor of the subject matter of the patent at issue in this case.

The Clerk shall enter this Order and provide a copy to all parties.

## MEMORANDUM AND RECOMMENDATION

CRONE, United States Magistrate Judge.

I. *Introduction*

Pending before the Court is Defendant D. Arlon Groves's ("Groves") Motion to Dismiss Count One of Plaintiff's Second Amended Petition, or in the Alternative, For Partial Summary Judgment (# 102).

Having reviewed the pending motion, the pleadings, the submissions of the parties, and the applicable law, this court is of the opinion that Groves's motion should be granted in part and denied in part. With respect to

Plaintiff Donald G. Heden's ("Heden") request that Groves be directed to remove defendant Dale Hill's ("Hill") name from all papers in the application for the patent to ensure that the issued patent will fully attribute Heden as sole inventor, Groves's motion to dismiss should be granted. With regard to Heden's request for a declaratory judgment that he is the sole inventor of the subject matter of the patent at issue, Groves's motion should be denied.

## II. *Background*

According to Heden's complaint, at some time before 1988, he created a new design for a round-bottom, dump truck body/trailer made of aluminum. In confidence, Heden disclosed to Hill, who was in the trailer manufacturing business, his allegedly revolutionary trailer design. In 1988, Heden and Hill agreed to develop as equal partners, a venture to manufacture Heden's design. Hill was to be responsible for obtaining and/or providing sufficient capital for the set up of a new company to manufacture, market, and sell commercial units of the invention. In late 1988 and early 1989, Hill requested that Joseph Nowiczewski ("Nowiczewski") and Robert J. Adam ("Adam") be included as equal owners to finance the venture.

In 1989, Heden, Hill, Nowiczewski, and Adam agreed to incorporate the proposed business under the name Ultra Lite Manufacturing, Inc. ("Ultra Lite"). Articles of Incorporation were filed on April 5, 1989, with the Texas Secretary of State, creating four classes of stock, with each owner to receive a different class: 10,000 class A shares to Hill; 10,000 class B shares to Nowiczewski; 10,000 class C shares to Heden; and, 10,000 class D shares to Adam. Nowiczewski was President of Ultra Lite. Adam was ultimately named Chairman of the Board, and Hill was the Chief Executive Officer. At some point in 1989, Heden retained Neal J. Mosely ("Mosely"), a patent attorney, to pursue an application for a patent on his creation and design.

According to Heden, a significant amount of money was spent on improving the fabrication plant on Sellers Road, between May and September 1989. The plant was owned by Nowiczewski and leased to Ultra Lite. Numerous dump truck bodies and trailers, using Heden's design, were fabricated and sold from March 1989 to June 1990. In the Summer of 1990, Ultra Lite began to suffer financial problems, which according to Heden, resulted from wasteful spending of corporate assets by Nowiczewski and Hill. Heden further claims that Adam failed to fulfill his investment commitment of $100,000.00 in the corporation. Ultimately, the fabrication plant was shut down, and the business was closed due to a lack of funds.

Heden contends that despite the fact he was a named director, several meetings were held by Hill, Adam, and Nowiczewski, without Heden being notified or invited. According to Heden, the meetings were held to discuss a plot to close the company, send it into bankruptcy, and sell the assets of Ultra Lite, including the patent rights, to Hill. Heden alleges that one such meeting was held on August 20, 1990. Shortly after this meeting, Heden claims that Hill sought the assistance of an attorney, Groves.

On October 30, 1990, Groves contacted Mosely by letter requesting files relating to the dump trailer/dump body invention, including the patent application. Groves represented in the letter that his office had been engaged by Ultra Lite for the purpose of obtaining the files. Groves stated in the letter that this was necessitated by Mosely's failure to deliver the files when requested by Nowiczewski, the President of Ultra Lite. Mosely responded by letter on November 1, 1990, stating that he considered Heden to be his client, not Ultra Lite. Mosely declined to release the files unless jointly instructed by Heden and Ultra Lite as to their disposition. Mosely also stated in the letter that if he did not have a joint resolution of the matter or a withdrawal of Groves's claim to the files by November 9, 1990, he would turn the files over to the court and file an action for interpleader and declaratory judgment. On November 6, Heden authorized Mosely by facsimile to release the files to Ultra Lite. Heden specifically stated in his authorization that he did not give Ultra Lite or any of its stockholders any right of ownership to any of his intellectual property or any of his in-

terest or claims to the ownership of the dump truck design or any other designs. After Mosely released the files to Groves, Heden alleges that Groves changed the application from a sole inventorship application in Heden's name to a joint inventorship application naming Hill first and Heden second, without consulting with Heden or investigating the true inventorship of the design. Subsequently, on January 18, 1991, Groves mailed the application to the Patent and Trademark Office ("PTO").

Heden alleges that Hill sought the assistance of Groves to exploit Heden's invention. On January 14, 1991, Groves incorporated Alumatech, Inc. ("Alumatech"). According to Heden, Hill was the sole owner of Alumatech at the time of incorporation. Groves was listed as the initial and sole director of Alumatech. One of Alumatech's purposes, found in its Articles of Incorporation, was "[t]o manufacture, have manufactured, market, sell, advertise and otherwise promote lightweight, high strength, container/transporter systems such as trailers...."

In November 1990, Ultra Lite filed for Chapter 7 bankruptcy protection. Heden contends that Hill made a proposal to Nowiczewski and Adam to buy all of the assets of Ultra Lite in January or February 1991. According to Heden, this proposal included a plan for the sale of the corporation's ownership interests in all assignments of patent rights it might have. Heden further claims that the plan called for the payment of a sum certain to each of the directors on each unit sold by Hill, his successors, or assignees, up to one-half the amount of each of Adam's and Nowiczewski's initial investment in Ultra Lite, as well as royalties. Heden contends that when he heard of the proposal, he informed Hill, Nowiczewski, and Adam that he was opposed to it. Heden also claims that Hill did not fully disclose his personal interest in the proposal, specifically, that he had incorporated a new company, Alumatech, to engage in the same type of business as Ultra Lite.

Heden alleges that Nowiczewski and Adam agreed to Hill's proposal without an investigation and without knowledge of the actual worth of the corporation and its assets. In addition, Heden claims that Nowiczewski accepted Hill's representation of the value of Heden's invention without seeking further information and without ordering an appraisal. Heden refused to sign the agreement memorializing Hill's proposal. Heden alleges that as a result of his refusal, Hill, Nowiczewski, and Adam conspired to create the documents necessary to record the transfer of Heden's rights to his invention. Heden claims that a document entitled "Action of the Board of Directors of Ultra Lite Manufacturing, Inc. Without First Meeting" was created and the signature of Heden was forged or in some other manner added to the signature line of this document by other than Heden's hand and without his consent. Additionally, Heden contends that in 1990 up through the date of the sale of the assets of Ultra Lite, Hill agreed with Heden to refinance the company so that he and Hill could proceed with the development of the invention as equal owners. Heden, however, asserts that Hill breached this agreement.

Moreover, Heden alleges that without his consent, Hill, Nowiczewski, and Adam signed an agreement on February 9, 1991, to transfer Ultra Lite's patent rights to Hill in exchange for royalty payments of $100 per dump trailer to Adam, Nowiczewski, and Heden. Heden alleges that he did not sign this agreement. Heden further contends that Hill agreed that payments to him would be put into an escrow account. Heden asserts that although Alumatech grossed over $9.6 million in sales in its first year of operation, 1993–1994, and Adam and Hill have received thousands of dollars in royalties, no payments have been made to him or to an escrow account for his benefit.

On January 22, 1993, the PTO notified Heden that a patent application was filed on January 18, 1991, in the name of "Hill and Heden." Heden requested a copy of the file on February 10, 1993, but due to delays by the PTO, he did not receive it until January 3, 1995. The patent of Heden's invention was issued on October 3, 1995, naming Hill and Heden as joint inventors, with Hill's name appearing before Heden's.

Heden initiated this action in state court on October 10, 1994. Groves removed the

case to this court. Heden filed his second amended complaint seeking a declaratory judgment that he is the sole owner of the patent. Heden also asserts claims of unjust enrichment, constructive fraud, common law fraud and coercion, constructive trust, interference with business relations, civil conspiracy, breach of director's duties to the corporation, usurping corporate opportunities, libel, slander, defamation, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and breach of contract.

Subsequent to Groves filing the pending motion, the court ordered Heden to submit a more definite statement with respect to certain paragraphs of his complaint and to add two defendants as indispensable parties to the lawsuit—Everlite, Inc. and GHB Patent, Inc. On March 4, 1996, Heden complied with this court's orders and filed his Third Amended Complaint alleging the same causes of action. Because count one was not changed from the Second Amended Complaint to the Third Amended Complaint, Groves's motion to dismiss remains viable as to Heden's Third Amended Complaint.

### III. *Analysis*

#### A. *The Standard for Dismissal under Rule 12(b)(6)*

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests only the formal sufficiency of the statements of the claims for relief. It is not a procedure for resolving contests about the facts or the merits of the case. In ruling on a motion to dismiss, the court must take the plaintiff's allegations as true, view them in a light most favorable to him, and draw all inferences in his favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *see also Capital Parks, Inc. v. Southeastern Advertising & Sales Sys., Inc.,* 30 F.3d 627, 629 (5th Cir.1994); *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284–85 (5th Cir.1993). Moreover, the court may not look beyond the four corners of the plaintiff's pleadings. *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992). Thus, the motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts in support

of his claim that would entitle him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir.1995); *In re U.S. Abatement Corp. v. Mobil Exploration & Producing U.S., Inc.,* 39 F.3d 556, 559 (5th Cir.1994); *ALX El Dorado, Inc. v. Southwest Sav. & Loan Ass'n,* 36 F.3d 409, 410 (5th Cir.1994); *McCartney,* 970 F.2d at 47.

#### B. *Correction of Inventorship*

Heden seeks in count one of his complaint a declaratory judgment as to the sole ownership of the invention and/or patent and requests "[t]he Court to declare and order that the entire right, title, and interest in and to the invention that is the subject of this cause by Plaintiff, including the design of the that (sic) invention be determined the property of Plaintiff." Heden further requests "[t]hat defendant Groves be directed to remove defendant Hill's name from all papers in the application for patent on the subject invention in this cause pending with the Patent and Trademark Office to ensure that the issued patent will fully attribute Plaintiff as sole inventor."

■ The controlling statute for correction of inventorship in an issued patent is 35 U.S.C. § 256. *Manildra Milling Corp. v. Ogilvie Mills, Inc.,* 745 F.Supp. 653, 655 (D.Kan.1990). Section 256, entitled "Correction of named inventor," provides:

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent *and such error arose without any deceptive intention on his part,* the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided by this section. The court before which such mat-

ter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

(emphasis added.) "Before the enactment of section 256, patentees and their assignees committed inventorship errors at their peril; misjoinder or nonjoinder of an inventor rendered the patent invalid." *MCV, Inc. v. King–Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed.Cir.1989). The purpose of § 256 was to provide a remedy for a bona fide mistake in inventorship and prevent invalidation of patents. *See Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed.Cir. 1994); *General Elec. Co. v. Brandon*, 25 U.S.P.Q.2d 1885, 1887, 1992 WL 394933 (N.D.N.Y.1992); *Rawlplug Co., Inc. v. Hilti Aktiengesellschaft*, 777 F.Supp. 240, 243 n. 4 (S.D.N.Y.1991).

The statute, however, allows a remedy only for innocent errors in joinder or nonjoinder of inventors. *See Bemis v. Chevron Research Co.*, 599 F.2d 910, 912 (9th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 378 (1979); *University of Colo. Found. v. American Cyanamid*, 880 F.Supp. 1387, 1398–99 (D.Colo.1995); *McMurray v. Harwood*, 870 F.Supp. 917, 919 (E.D.Wis. 1994); *General Elec. Co.*, 25 U.S.P.Q.2d at 1887, 1992 WL 394933; *Eldon Indus., Inc. v. Rubbermaid, Inc.*, 735 F.Supp. 786, 817 n. 16 (N.D.Ill.1990); *Dee v. Aukerman*, 625 F.Supp. 1427, 1429–30 (S.D.Ohio 1986). Thus, when errors in inventorship are intentional or fraudulent, correction will not be allowed. *Standard Oil Co. v. Montedison, S.p.A.*, 494 F.Supp. 370, 387 (D.Del.1980), *aff'd*, 664 F.2d 356 (3d Cir.1981), *cert. denied*, 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982). Moreover, "[s]ection 256, though remedial in character, is limited in effect and cannot properly be the vehicle for substituting inventors on a patent in a claim sounding in conspiracy and fraud." *Bemis*, 599 F.2d at 912; *see McMurray*, 870 F.Supp. at 920–21; *Eldon Indus.*, 735 F.Supp. at 817 n. 16.

1. *Interpretation of "without any deceptive intention on his part"*

Although it is clear that to correct a naming error, the error must have arisen without any deceptive intention, it is not apparent to what the phrase "on his part" refers as used in the statute, "without any deceptive intention on his part...." 35 U.S.C. § 256. The Supreme Court and the Federal Circuit have not squarely addressed whether the phrase "without any deceptive intention on his part" in § 256 refers to the patentee, the omitted inventor, or both. *Stark v. Advanced Magnetics, Inc.*, 894 F.Supp. 555, 559 (D.Mass.1995); *University of Colo. Found.*, 880 F.Supp. at 1398. Furthermore, with respect to the few cases that have expressly dealt with the meaning of the phrase, there is a split of authority. The court in *Rival Mfg. Co.* determined that the reference to "his" must be understood to mean, "the inventor(s), their employers, or their privies in interest, including any attorneys acting on behalf of the applicant for the patent in question." 358 F.Supp. at 102. The court in *General Elec. Co.* pointed out that in *Rival*, the court held "that the 'on his part' language referred to both the person named as the inventor and the person seeking correction." 25 U.S.P.Q.2d at 1887. In *General Elec. Co.*, the court found that "[b]ased on the case law, at a minimum there must be a lack of deceptive intent on the part of the person originally named as the inventor." *Id.* In addition, a well respected commentator in the field of patent law, Donald S. Chisum, noted that the term "his" used in § 256 refers to the misjoined or nonjoined party. *See* 1 Donald S. Chisum, Patents § 2.04[4] (1995). Finally, in *Stark*, the court interpreted the statute as requiring both the applicant and the actual inventor to have made an honest mistake and be innocent of fraud. 894 F.Supp. at 559.

Here, Groves seeks to dismiss count one of Heden's complaint for failure to state a claim. Groves contends that Heden cannot seek a declaratory judgment that he is the sole inventor of the subject matter of the patent because the alleged "error," naming Hill as a joint inventor in the patent, was done as a result of a deliberate decision by Hill. Although Groves did not attach an affidavit by Hill, he alleges that Hill had full knowledge of what he had done and what Heden had done with respect to the invention and that Hill related such knowledge to Groves.

Groves claims that he informed Hill of the legal significance of such facts. Thus, according to Groves, the naming of Hill as a joint inventor was the result of a deliberate decision by a responsible, knowledgeable party having full notice of the pertinent facts and their legal significance. According to Groves, Heden can prove no set of facts in support of the claims alleged in the complaint that will entitle him to the requested relief, *i.e.*, to a change of inventorship in the patent.

Heden acknowledges in his response to Groves's motion to dismiss that he contends that the handling of the patent was done with deceptive intent by Hill and Groves. As noted above, § 256 remedies only innocent errors in joinder or non-joinder of inventors. *See Bemis,* 599 F.2d at 912; *University of Colo. Found.,* 880 F.Supp. at 1398–99; *McMurray,* 870 F.Supp. at 919; *General Elec. Co.,* 25 U.S.P.Q.2d at 1887; *Eldon Indus.,* 735 F.Supp. at 817 n. 16; *Dee,* 625 F.Supp. at 1429–30. Thus, by Heden's own admission, that portion of count one seeking the removal of Hill's name from the patent does not fall within the express language of § 256.

### 2. *Pleading in the Alternative and § 256*

Heden asserts in his response to Groves's motion to dismiss, however, that because Groves contends that he was simply following the advice of Hill to instruct him on inventorship, it is possible that Hill and Groves could claim (and the jury could find) that there was no deceptive intent on the part of Hill or Groves in obtaining the patent. Thus, Heden argues that he is entitled to plead in the alternative a separate cause of action under Fed.R.Civ.P. 8(a). *See Intermedics, Inc. v. Ventritex, Inc.,* 775 F.Supp. 1258, 1268 (N.D.Cal.1991). In addition, Heden claims that Groves's motion to dismiss should be denied because Groves did not request a more definite statement or request Heden to replead the issue.

· Pleading claims in the alternative is generally allowed under Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) states that "[r]elief in the alternative or of several different types may be demanded." Fed. R.Civ.P. 8(a). With respect to patent inventorship, however, a plaintiff's ability to plead

in the alternative or to plead uncertainty is limited. In *Dee,* the court stated that a pleading of uncertainty as to whether a joint inventor's omission was inadvertent or wrongful was insufficient for purposes of § 256. 625 F.Supp. at 1430. The court directed the plaintiff to file a more definite statement setting forth precisely the specific facts relevant to her claim against the defendants. *Id.* The court concluded that it would have jurisdiction to proceed with the case only if the plaintiff's claim was one of erroneous omission. *Id.* Conversely, in *Intermedics, Inc.,* the court denied the defendant's motion to dismiss and allowed the plaintiff to plead ignorance of whether the alleged error was advertent or inadvertent. 775 F.Supp. at 1268. The court also stated, however, that "[i]f plaintiff later discovers evidence that the named inventors are the correct inventors, or that the error in naming the inventors was made with deceptive intent, plaintiff shall promptly withdraw this count." *Id.* at 1268–69. Additionally, in *General Elec. Co.,* the court, although not specifically denying plaintiff the ability to plead in the alternative, refused to allow a contrary pleading based on the case as a whole. 25 U.S.P.Q.2d at 1887. The court dismissed plaintiffs' § 256 claim stating:

> Based upon the case law, at a minimum there must be a lack of deceptive intention on the part of the person originally named as the inventor. The statute allows for administrative correction of mistakes and specifically provides that if the error is correctable under § 256 the patent will not be invalidated. Here, not only has plaintiff not mentioned § 256 in the complaint, but the tenor of the complaint is that defendant did not mistakenly name himself as the sole inventor....

*Id.*

In *University of Colo. Found.,* the court refused to allow plaintiffs' claim for correction under § 256 because it was based on fraud and deception. 880 F.Supp. at 1399. Like the present case, the plaintiffs in *University of Colo. Found.* argued that a jury could find that the naming of the inventor was not intentionally deceptive but merely erroneous. *Id.* The court, faced with plain-

tiffs' request to proceed with alternative theories under § 256, stated that "[s]uch a claim is so contrary to plaintiffs' original § 256 claim (and each state theory) that it can hardly be deemed 'alternative.'" *Id.* at 1399–1400 (citing *McMurray*, 870 F.Supp. at 920–21). In *McMurray*, the court disallowed the plaintiff's request to proceed with alternative theories under § 256. 870 F.Supp. at 921. Finally, in the most recent case on this issue, *Stark*, the court held that both the actual inventor and the named inventor must have made a mistake and be innocent of fraud. 894 F.Supp. at 559. The court permitted the plaintiff to plead his claims in the alternative, arguing both fraud and mistake. *Id.* at 560. Yet, the court noted that eventually the plaintiff will "have to chose (sic) which horse he seeks to ride to verdict, [but] at present his section 256 claim remains viable...." *Id.*

Here, Groves argues that Heden has alleged in no uncertain terms that the inclusion of Hill's name on the patent was not inadvertent, but was willful, deliberate, wrongful, and fraudulent. Groves also contends that a plaintiff cannot alternatively plead that he does not know or he is uncertain whether the error was inadvertent or wrongful when he has already pled fraud. Groves claims that Heden's complaint is replete with allegations of conspiracy, fraud, and wrongdoing. Specifically, Groves points to ¶ 47 of Heden's complaint, which alleges that Heden's name was forged or in some other manner added to the signature line of a document entitled "Action of the Board of Directors of Ultra Lite Manufacturing, Inc. Without First Meeting." According to Groves, this document contains an assignment of the patent rights. In addition, Heden alleges in ¶ 45 of his complaint that Groves changed the application from a sole inventor application in Heden's name to a joint inventor application naming Hill first with Heden second, without *any consultation or input from Heden* and without sufficient inquiry into the true inventorship of the design. Heden claims in ¶ 47 that Groves recklessly misrepresented the inventorship of the patent application to the PTO. Furthermore, with respect to count three of Heden's complaint, constructive fraud, Heden alleges in ¶ 64 that Groves breached his fiduciary duty to Heden by recklessly misrepresenting the inventorship of the application to the PTO and knowingly filing false affidavits with the PTO.

In relation to his claims in count four for common law fraud and coercion, Heden alleges in ¶ 68 that Groves knew of the deception and promoted the fraud by taking the prosecution of the patent filed by Heden on the design away from Mosely and subsequently changing the application from a sole inventor application in Heden's name to a joint inventor application in the names of Hill and Heden. Heden further alleges in ¶ 69 that the defendants' conduct was done with malice, willful, wanton, and callous indifference to his rights. Similarly, in count 6, interference with business relations, Heden alleges in ¶ 74 that the defendants' conduct constituted actual as well as conspiratorial intention to, among other things, destroy his patent rights. Heden asserts in ¶ 77 with respect to his claim for civil conspiracy, that Hill, Nowiczewski, and Adam conspired with Groves by fabricating documents and filing false affidavits with the PTO to deprive Heden of patent rights in and to his invention. Additionally, when asserting claims for libel, slander, and defamation in count 10, Heden alleges that Groves's and Hill's actions with respect to the patent application were libelous. Heden claims in ¶ 100 that the defendants' actions were conducted with recklessness or malice. Finally, in count 11, the same alleged reckless conduct is made the basis for a RICO cause of action.

Hence, Heden's complaint is far removed from allegations of mere inadvertence or mistake. Instead, the complaint is packed with allegations of fraud, conspiracy, and wrongful conduct by the defendants with respect to the patent at issue. Moreover, because Heden admits in his response to Groves's motion to dismiss that he contends that the handling of the patent was done with deceptive intent by Groves and Hill, Heden cannot replead the issue alleging ignorance of whether the alleged error was inadvertent or advertent. In *Intermedics, Inc.*, the court, which initially allowed a pleading of ignorance, required that if the plaintiff subsequently discovered that the error in naming

the inventors was made with deceptive intent, the plaintiff was promptly to withdraw the count for correction under § 256. 775 F.Supp. at 1268–69. In this case, Heden's assertion of his right to proceed with alternative theories is so contrary to his original request for declaratory judgment (and each state law theory of recovery) that it can hardly be deemed "alternative." *See University of Colo. Found.*, 880 F.Supp. at 1399–1400; *McMurray*, 870 F.Supp. at 920–21. Here, unlike in *Stark,* the plaintiff has already "chose[n] which horse he seeks to ride to verdict." 894 F.Supp. at 560. He should not, at this juncture, be allowed to backtrack to the corral in hopes of finding a more suitable mount.

Accordingly, count one of Heden's complaint should be dismissed to the extent it requests the removal of Hill's name from the patent, a remedy that, under these circumstances, is not permitted by 35 U.S.C. § 256.

## IV. *Conclusion*

This court RECOMMENDS that Groves's Motion to Dismiss Count One of Plaintiff's Second Amended Petition be GRANTED IN PART and DENIED IN PART.

With respect to Heden's request for Groves to be directed to remove Hill's name from all papers in the application for the patent to ensure that the issued patent will fully attribute Heden as sole inventor, this court RECOMMENDS that Groves's motion to dismiss be GRANTED. The nature of the conduct alleged by Heden is not the type of innocent error required for correction of the patent under 35 U.S.C. § 256.

With regard to Heden's request for a declaratory judgment that he is the sole inventor of the subject matter of the patent at issue in this case, this court RECOMMENDS that Groves's motion to dismiss be DENIED, as this remedy is unaffected by § 256 because it does not involve the correction of the patent.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties. Under Fed.R.Civ.P. 72, the parties have ten days from receipt to file specific, written objections to the Memorandum and Recommendation. Failure to file objections bars an attack on the factual findings on appeal. The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208–1010. Copies of the objections must be mailed to the opposing parties and to the chambers of the magistrate judge, P.O. Box 610070, Houston, Texas 77208.

SIGNED at Houston, Texas on this 8th day of March, 1996.