444 F.2d 406
 170 U.S.P.Q. 374
 IOWA STATE UNIVERSITY RESEARCH FOUNDATION, INC., Appellant,
v.
SPERRY RAND CORPORATION and Control Data Corporation, Appellees.
CONTROL DATA CORPORATION, Appellant,
v.
IOWA STATE UNIVERSITY RESEARCH FOUNDATION, INC., Appellee.
 Nos. 15320, 15321.
 United States Court of Appeals, Fourth Circuit.
 Argued April 7, 1971.
Decided June 22, 1971.
 
 Jerome F. Fallon, Chicago, Ill. (Timothy L. Tilton, Chicago, Ill., and Benjamin C. Howard, Baltimore, Md., on brief), for Iowa State University Research Foundation, Inc.
 Allen Kirkpatrick, Washington, D.C. (Kevin E. Joyce, William T. Bullinger, and Cushman, Darby & Cushman, Washington, D.C., and Joseph A. Genovese, Orange, Cal., on brief), for Control Data Corp.
 Laurence B. Dodds, Great Neck, N.Y. (John W. Avirett, II, Baltimore, Md., E. Jerry Light, Blue Bell, Pa., Thomas J. Nikolai, St. Paul, Minn., and Piper & Marbury, Baltimore, Md., on brief), for Sperry Rand Corp.
 Before WINTER, CRAVEN, and BUTZNER, Circuit Judges.
 BUTZNER, Circuit Judge:
 
 
 1
 The principal issue raised in this interlocutory appeal is whether a district court may correct a patent by adding the name of a joint inventor when the named inventor, or his assignee, does not agree to the correction.
 
 
 2
 Sperry Rand Corp. sued Control Data Corp. for infringement of Patent No. 2,629,827. Iowa State University Research Foundation, Inc., moved to intervene so that its assignor, John V. Atanasoff, could be certified as a joint inventor along with the named inventors, John P. Eckert, Jr., and John Mauchly. Over the objections of Sperry Rand, the assignee of Eckert and Mauchly, and Control Data, the district court allowed Iowa State to intervene. However, it ruled that it lacked authority to correct the patent because Eckert, Mauchly, and Sperry Rand withheld consent. We believe the court correctly allowed intervention, but its order should be enlarged to permit Iowa State to seek a certificate naming Atanasoff as a joint inventor.
 
 
 3
 At this state of the proceedings the issue presents only a question of law. For the purposes of these appeals, we assume that Atanasoff was a joint inventor whose name was omitted from the patent by error without deceptive intention on his part, and that neither he nor his assignees are barred from correcting the patent by laches, equitable estoppel, or any other defense. Of course, Atanasoff's entitlement may be questioned in subsequent proceedings. The appeals, therefore, require only interpretation of 35 U.S.C. 256, which provides:
 
 
 4
 'Whenever a patent is issued on the application of persons as joint inventors and it appears that one of such persons was not in fact a joint inventor, and that he was included as a joint inventor by error and without any deceptive intention, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate deleting the name of the erroneously joined person from the patent.
 
 
 5
 'Whenever a patent is issued and it appears that a person was a joint inventor, but was omitted by error and without deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate adding his name to the patent as a joint inventor.
 
 
 6
 'The misjoinder or nonjoinder of joint inventors shall not invalidate a patent, if such error can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.'
 
 
 7
 Sperry Rand and Control Data insist that a court's power to correct a patent is restricted by the first sentence of the third paragraph of 256:
 
 
 8
 'The misjoinder or nonjoinder of joint inventors shall not invalidate a patent, if such error can be corrected as provided in this section.'The italicized clause, they say, is a procedural limitation requiring all corrections, whether made by the Commissioner or a court, to be on joint application of all concerned. Iowa State, on the other hand, argues that the sentence refers to substantive law. Its function, Iowa State asserts, is to prevent the misjoinder or nonjoinder of inventors from invalidating a patent if the defect arose through error without deception. Procedure, Iowa State claims, is governed by other provisions of the statute which require (1) joint application if the Commissioner is asked to make the correction, or (2) notice and hearing when a court is the forum.
 
 
 9
 Section 256 is a remedial provision of the Patent Act of 1952. Because Article I, 8 of the Constitution authorizes an exclusive right in discoveries to inventors and none others, the law has been strictly construed to grant patents only to the true inventors. Thus, a patent issued to but one of joint inventors, upon representation that he is the sold inventor, is void. Similarly, if more persons than the true inventors are named, the patent is void. See Shreckhise v. Ritchie, 160 F.2d 593, 595 (4th Cir. 1947); 1 Deller's Walker on Patents 184 (2d ed. 1964). Whether a patent is the work of one or several inventors acting jointly is often a question that is not free from difficulty. See, e.g., Wm. R. Thropp & Sons Co. v. De Laski & Thropp C.W.T. Co., 226 F. 941, 947 (3d Cir. 1915); Monsanto Co. v. Kamp, 269 F.Supp. 818 (D.D.C.1967). And it was to mitigate the hardship of mistake that 256 was enacted. Though legislative history is scant, the purpose of the statute is shown by the Senate and House Reports, which are virtually the same:
 
 
 10
 'Section 256 is a new section in the law that is correlated with section 116[1] and relates to a mistake in joining a person as a joint inventor. Very often two or three people make an invention together. They must apply as joint inventors. If they make a mistake in determining who are the true inventors, they do so at their peril. This provision permits a bona fide mistake in joining a person as inventor or in failing to join a person as an inventor to be corrected.' S.Rep.No.1979, 82d Cong., 2d Sess., p. 7 (1952).
 
 
 11
 The legislative history is otherwise inconclusive. At extensive legislative hearings, several witnesses discussed the correction of misjoinder or nonjoinder, but no testimony expressly dealt with the narrow issue raised by this case. The Reviser's Note adds little information.[2]
 
 
 12
 After the passage of the Patent Act of 1952, P. J. Federico, Examiner-in-Chief of the Patent Office and a drafter of the bill, spoke at a number of meetings of the patent bar. These lectures formed the basis for his Commentary on the New Patent Act, which is published in 35 U.S.C.A., p. 1 (1954). Federico expressly notes that the consent of all parties is not required to correct a patent through judicial proceedings:
 
 
 13
 'In either case (misjoinder or nonjoinder), if the inclusion or exclusion occurred by error and without any deceptive intention, the Commissioner of Patents may correct the patent by a certificate deleting the name of the erroneously joined inventor, or adding the name of the erroneously omitted inventor, as the case may be. All the parties, including the assignee, must concur in applying for such correction. If they do not concur, the correction can only be made on order of a court as provided in the third paragraph.
 
 
 14
 'The third paragraph of section 256, states that the misjoinder or nonjoinder of joint inventors shall not invalidate a patent if the mistake is one that can be corrected under the section, that is, arose by error and without deceptive intention, and gives a court authority to order correction.
 
 
 15
 Sperry Rand and Control Data point out that Federico did not include his observations about the broad authority of a court to make corrections in his testimony at the legislative hearings, and they protest that his Commentary cannot be considered a part of the legislative history. We agree, but nonetheless Federico's Commentary is entitled to the weight ordinarily accorded an acknowledged authority in his field.
 
 
 16
 The distinction which Federico noted between the power of the Commissioner, who can correct a patent only on consent of all parties, and that of a court, which can act without consent, has a rational foundation. Patents 'have the attributes of personal property.' 35 U.S.C. 261; see 4 Deller's, Walker on Patents 41 (2d ed. 1965). After the issuance of a patent, the Commissioner lacks jurisdiction over it save in interference proceedings, where the right of judicial review is assured. 35 U.S.C. 141, 146. The patentee has a vested property right that can be canceled, revoked, or annulled only by judicial proceedings that afford due process of law. The difference between the jurisdiction of the Commissioner and that of a court is illustrated by McCormick Harvesting Machine Co. v. C. Aultman Co., 169 U.S. 606, 608, 18 S.Ct. 443, 42 L.Ed. 875 (1898):
 
 
 17
 'It has been settled by repeated decisions of this court that when a patent has received the signature of the secretary of the interior, countersigned by the commissioner of patents, and has had affixed to it the seal of the patent office, it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or canceled by the president, or any other officer of the government. * * * It has become the property of the patentee, and as such is entitled to the same legal protection as other property. * * *
 
 
 18
 'The only authority competent to set a patent aside, or to annul it, or to correct if for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent. * * *
 
 
 19
 These well-established principles underlie the limitation that Congress placed on the Commissioner but not on the courts.
 
 
 20
 The only case that deals with the question of consent is Merry Mfg. Co. v. Burns Tool Co., 206 F.Supp. 53 (N.D.Ga.1962), aff's, 335 F.2d 239 (5th Cir. 1964). There the district court held that 256 required all parties to apply to the court for correction. Since the omitted co-inventor was unwilling to apply, the district court held that 'the correction cannot be made by reason of failure to comply with the statutory provisions.' 206 F.Supp. at 59. The court of appeals, while affirming, did not follow the district court's reasoning. Instead it stated that 'correction cannot be made because under controlling principles, the omission was not 'by error.' * * *' 335 F.2d at 242. We think the court of appeals' resolution of the issue was sounder and, consequently, we are not inclined to adopt the district court's construction of the statute.
 
 
 21
 Sperry Rand and Control Data urge that Congress never intended to provide for 'inventorship contests' in the federal courts and that Iowa State's exclusive remedy was under 35 U.S.C. 116 and 135. But these sections cannot provide the relief that Congress plainly intended should be available under 256. Section 116 deals with the correction of applications and it now furnishes no remedy to Iowa State. Section 135, dealing with interferences has a one year limitation, which in this case expired over 15 years ago. Section 256, in contrast, has no period of limitation. Congress, however, did nothing incongruous in providing a short limitation for contests over priority through interferences and no limitation for the correction of errors committed without deceptive intention. Moreover, regardless of our interpretation of 256, 'inventorship contests' will continue to be heard in federal courts. In numerous instances, courts have been called on to determine whether a patent is the work of a sole inventor or joint inventors. Section 256 does not substantially change the contest; it does however, add an opportunity for correction as an alternative to invalidation. We dare say that even if we were to restrict 256 to corrections made on the joint application of all parties, Control Data would continue to press its defense that Eckert and Mauchly were not the inventors and the district court would have to consider Atanasoff's role.
 
 
 22
 We conclude, therefore, that a literal reading of the statute is proper to achieve the broad remedial purposes Congress intended. In short, when the Commissioner is asked to correct innocent errors of misjoinder or nonjoinder, all parties must apply for relief to comply with the requirements of the first and second paragraphs of 256. But when relief is sought in court, as allowed by the third paragraph, notice and an opportunity for all parties to be heard are the only requisites for judicial action that Congress expressly prescribed. We are not pursuaded that we should engraft another.
 
 
 23
 Altogether apart from its position concerning the necessity of consent of all parties for relief under 256, Control Data argues that the 1952 Act does not apply because Atanasoff's activities took place before the effective date of the Act. Since the pre-1952 law contained no provisions for the correction of nonjoinder, Control Data contends Iowa State is without any remedy, and if Atanasoff was in fact a joint inventor, the patent must be held invalid. Sperry Rand joins Iowa State in opposing this contention.
 
 
 24
 Eckert and Mauchly applied for the patent on October 31, 1947, their application was allowed July 28, 1952, the fee was paid in January 1953, and the patent issued February 24, 1953. Section 4(a) of the Act[3] provides in part:
 
 
 25
 'This Act shall take effect on January 1, 1953. * * * It shall apply to further proceedings on applications pending on such date and to patents granted on such applications except as otherwise provided.'
 
 
 26
 Since the Eckert-Mauchly application was pending on January 1, 1953, the Act expressly governs the patent unless the statute provides otherwise. Exceptions to the application of the Act are set forth in subsections (b) through (h) of 4. Since 256 is not among the provisions of the Act listed as an exception, it is apparent that the general rule concerning the effective date of the Act makes 256 applicable to the Eckert-Mauchly patent. See P. J. Federico, Commentary on the New Patent Act, 35 U.S.C.A., pp. 1, 60.
 
 
 27
 Control Data, however, points to 5 of the Act, which provides:
 
 
 28
 'The sections or parts thereof of the Revised Statutes or Statutes at Large enumerated in the following schedule are hereby repealed. Any rights or liabilities now existing under such sections or parts thereof shall not be affected by this repeal.'
 
 
 29
 This section, however, does not support Control Data's argument. As Federico points out in his Commentary, the saving clause in 5 has no bearing on applications pending January 1, 1953, or on patents resulting from such applications 'since there are no rights in existence until the patent is granted.' 35 U.S.C.A., p. 60.
 
 
 30
 In No. 15,320, the judgment of the district court is reversed; in No. 15,321, it is affirmed, and this case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 35 U.S.C. 116 provides for the correction of misjoinder or nonjoinder in applications for patents. This section and Patent Office Rules of Practice 47 (37 C.F.R. 1.47) allow an application to be filed and a patent to issue even though a joint inventor refuses to join in the application. Otherwise, consent of all parties is generally required for correction of the application. Rules of Practice 45 (37 C.F.R. 1.45)
 
 
 [2]
 'The first two paragraphs provide for the correction of the inadvertent joining or nonjoining of a person as a joing inventor. The third paragraph provides that a patent shall not be invalid for such cause, and also provides that a court may order correction of a patent; the two sentences of this paragraph are independent.' 35 U.S.C. 256 n
 
 
 [3]
 Act of July 19, 1953, ch. 950, 66 Stat. 815, 4(a). This section and 5 of the Act were not codified, but appear in an introductory note to Title 35, U.S.Code