David D. STARK, M.D., Plaintiff–
Appellant,

v.

ADVANCED MAGNETICS, INC., Jerome Goldstein, Ernest V. Groman, and Lee Josephson, Defendants–Appellees.

No. 96–1233.

United States Court of Appeals,
Federal Circuit.

July 11, 1997.

Henry C. Dinger, Goodwin, Procter & Hoar LLP, Boston, MA, argued, for plaintiff–appellant. With him on the brief was Kenneth J. Parsigian.

Ian Crawford, Todd & Weld, Boston, MA, argued, for defendants–appellees. With him on the brief were David S. Godkin and Richard S. Sanders, Testa, Hurwitz & Thibeault, LLP, Boston, MA.

Before PLAGER, RADER, and SCHALL, Circuit Judges.

Opinion for the court filed by Circuit Judge RADER; opinion concurring in the result, but dissenting in the outcome, filed by Circuit Judge PLAGER.

RADER, Circuit Judge.

Dr. David D. Stark brings this interlocutory appeal from a judgment of the United States District Court for the District of Massachusetts to determine under what circumstances correction of inventorship is permissible. The district court held that correction of inventorship is allowable only when "the true inventor was left off the application as a result of a mistake and not as a result of deception, on the part of *either* the named inventor or the actual inventor." *Stark v. Advanced Magnetics, Inc.*, 894 F.Supp. 555, 560, 36 U.S.P.Q.2d 1764, 1768 (D.Mass.1995). Because correction of inventorship under 35 U.S.C. § 256 (1994) only requires an inquiry into the intent of the nonjoined inventor, this court reverses the judgment of the district court.

## I.

Dr. David Stark, a physician specializing in radiology, collaborated with Advanced Magnetics, Inc. (AMI) in developing magnetic resonance imaging (MRI) technologies. This work resulted in six patents issued between September 1988 and April 1992. The patents include U.S. Patent No. 4,770,183 (the '183 patent) and five others. This court set forth a more detailed recitation of the factual background of these patents in *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1572–73, 31 U.S.P.Q.2d 1290, 1291–92 (Fed.Cir.1994). Stark was not named as an inventor on any of the patents.

In September 1992, Stark filed suit against AMI and several of its officers, Jerome Goldstein, Ernest V. Groman, and Lee Josephson (collectively, AMI), alleging that he is the sole inventor of the subject matter covered by the '183 patent and the joint inventor of the subject matter disclosed in the other five patents. Stark's complaint requested correction of inventorship under 35 U.S.C. § 256. Stark also requested damages and injunctive relief under Massachusetts tort and contract law.

AMI sought summary judgment on two theories. First, AMI argued that Stark's failure to seek correction diligently estopped him from this challenge. Second, AMI argued that Stark's allegation of deception by AMI in his state law claims precludes correction of inventorship under section 256. The district court granted AMI's motion for summary judgment based on its first argument, without reaching the second question. An appeal to this court followed. In July 1994, the Federal Circuit vacated the district court's holding and remanded "for determination of the merits of the asserted inventorship claims." *Stark*, 29 F.3d at 1577.

On remand, the district court interpreted section 256 "as requiring that *both* the applicant (here, [AMI]) and the actual inventor (here, Stark) must have made an honest mistake and must be innocent of fraud." *Stark*, 894 F.Supp. at 559. Under this interpretation of the statute, the district court ruled that Stark's federal law claim for correction of inventorship conflicted with his state law claims for conversion, theft of trade secrets, fraud and deceptive conduct. Because Stark's state law claims alleged fraud on the part of the patent applicants, the district court dismissed Stark's action for correction of the inventors on the patent. In order to maintain both causes of action, Stark then sought and received permission to file this interlocutory appeal to determine who must act without deceptive intent in order to correct inventorship under section 256.

## II.

■ The sole issue in this case is the meaning of section 256. Statutory interpretation is a pure question of law, subject to complete and independent review by this court. *See In re Carlson*, 983 F.2d 1032, 1035, 25 U.S.P.Q.2d 1207, 1209 (Fed.Cir. 1992). This court generally regards the meaning of a statute's language "as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3121, 92 L.Ed.2d 483 (1986) ("When ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.") (citations and internal quotations omitted); *Johns–Manville v. United States*, 855 F.2d 1556, 1559 (Fed.Cir.1988).

Title 35 requires that an applicant for a patent disclose the names of all inventors. 35 U.S.C. §§ 111, 115–16 (1994). The patent statute also authorizes correction of the inventors' names in applications, 35 U.S.C. § 116, and in patents, 35 U.S.C. § 256. Section 256 permits correction by application to the Commissioner or in federal court:

§ 256. Correction of named inventor.

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue[ ] a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

This section addresses separately two varieties of error in inventorship—misjoinder and nonjoinder. The first clause of section 256 addresses misjoinder where error lists a person who is not an inventor. The second clause addresses nonjoinder where error fails to list a person who is an inventor. In the latter case, the error cannot involve any deceptive intention by the nonjoined inventor. This case invokes both clauses. As to the '183 patent, Stark alleges both the misjoinder of the AMI inventors, as well as his own nonjoinder. As to the remaining five patents, Stark alleges nonjoinder.

### A.

As an initial matter, this court must determine whether the standards defined in the first paragraph of section 256 apply to both courts and the Commissioner. The concurrence regards the parallel paths to correction as fraternal twins, related and similar, yet operating independently from each other.

This approach was apparently born of the assumption that the section's separate reference to administrative and judicial correction somehow freed courts of the constraints included in the remainder of section 256. The statutory language, however, does not survive such surgical separation of the administrative Chang and judicial Eng. The first sentence of the second paragraph clarifies that all instances of correction proceed under the standards "provided in this section." Then the next sentence permits courts "before which *such matter* is called in question" to also order correction. The "such matter" upon which the court may act is "correction as provided in this section." Thus, section 256 expressly applies the standards of the entire section, including the first paragraph, to both administrative and judicial proceedings. In other words, the nonjoinder and misjoinder clauses supply the heart of the correction standard from which both sentences of the second paragraph draw lifeblood. To hold otherwise would both contradict the language of the statute and leave the district court unfettered discretion to decide when and under what terms to allow correction.

Our sister circuit's opinion, cited in the concurrence, is not to the contrary. In *Iowa State University Research Foundation, Inc. v. Sperry Rand Corp.*, 444 F.2d 406, 170 U.S.P.Q. 374 (4th Cir.1971), the Fourth Circuit addressed the question of whether consent of all parties is necessary to state a claim for correction in the district court. That court concluded properly that such consent is not necessary. *Id.*, 444 F.2d at 410. In fact, inventorship contests by definition will lack consent of all inventors. The court then recognized, therefore, that the only procedural prerequisites to maintain a correction action in district court are notice and an opportunity for all parties to be heard. *Id.*; *see MCV, Inc. v. King–Seeley Thermos Co.*, 870 F.2d 1568, 1570, 10 U.S.P.Q.2d 1287, 1289 (Fed.Cir.1989) ("[Section 256] prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject-matter jurisdiction in the district court over a dispute raising solely a joint inventorship

issue among contending co-inventors."). However, the Fourth Circuit did not address the substantive standards to be applied by district courts in correcting inventorship. Indeed, a number of federal courts have applied substantive standards in correcting inventorship under section 256. *See, e.g., Bemis v. Chevron Research Co.,* 599 F.2d 910, 203 U.S.P.Q. 123 (9th Cir.1979); *University of Colo. Found. Inc. v. American Cyanamid,* 880 F.Supp. 1387, 35 U.S.P.Q.2d 1737 (D.Colo.1995). As noted above, the language of the statute itself directs courts to correct under standards "provided in this section."

## B.

■ AMI urges that this court has held previously that section 256 provides a remedy only in the case of a "bona fide mistake in inventorship." *Stark,* 29 F.3d at 1573. This court's statement, however, referred generally to the section's purpose, without precluding its application in instances of deliberate nonjoinder of an inventor. In the earlier appeal involving these same patents, this court stated: "The purpose of section 256 was to provide a remedy for a bona fide mistake in inventorship." *Id.* at 1573 (citations omitted). From that general proposition, this court determined that diligence is not a requirement to correct inventorship under section 256. *Id.* at 1576–77. More importantly for this appeal, this court remanded "for determination of the merits of the asserted inventorship claims." *Id.* at 1577. Thus, the reference to the purpose of the section did not resolve the issue remanded to the district court and now before this court on interlocutory appeal. Without binding precedent on the meaning of the terms "error" and "without any deceptive intention on his part," this court consults again the statutory language.

As noted, section 256 permits the Commissioner and federal courts to correct erroneous listing of inventors in an issued patent. In the event of nonjoinder of an inventor, this error must occur "without any deceptive intention on his part." The clause "on his part" refers to the antecedent "inventor," meaning that the omitted inventor must not have engaged in any deception related to the nonjoinder.

Read together, the separate misjoinder and nonjoinder clauses of section 256 enlighten the meaning of the term "error." The misjoinder clause does not contain the "without any deceptive intention" language. If the term "error" referred only to honest mistakes, the statute would have no need to add the "without deceptive intention" requirement in the nonjoinder clause. An error could not be honest if undertaken with deceptive intentions. Thus, reading section 256 to avoid redundancy, *see, Kungys v. United States,* 485 U.S. 759, 778, 108 S.Ct. 1537, 1550, 99 L.Ed.2d 839 (1988) ("[N]o provision should be construed to be entirely redundant."), the term "error" must embrace more than simply honest mistakes. Indeed, reading the term "error" to include all varieties of mistakes—honest and dishonest—harmonizes well with the title 35 policy of seeking to reward the actual inventors of technological advances.

Although not necessary to a proper construction of section 256, the enactment history of this section illustrates that this less restrictive reading of "error" serves well the policy of rewarding actual inventors. The district court read this history in its proper context:

> The legislative history of the 1982 amendments to 35 U.S.C. §§ 116 and 256 strongly suggests that Congress intended to permit correction of inventorship, without regard to the conduct of the named inventor, as long as there was no deceptive intention on the part of the true inventor. *See, e.g.,* H.R.Rep. No. 97–542, 97th Cong., 2d Sess. (1982), *reprinted in* 1982 U.S.C.C.A.N. 765, 773 ("The commissioner must be assured of the presence of innocent error, without deceptive intention on the part of the true inventor or inventors, before permitting a substitution of a true inventor's name.").

*Stark,* 894 F.Supp. at 559 n. 3. As the district court recognized, this supportive indicator of statutory meaning linked the availability of section 256 to the policy of rewarding the actual inventor.

AMI directs our attention to 35 U.S.C. § 116, which speaks to the correction of inventorship during prosecution. It provides in pertinent part as follows:

> Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Commissioner may permit the application to be amended accordingly, under such terms as he prescribes.

35 U.S.C. § 116 (1994).

We read section 116 as requiring lack of deceptive intent in both cases of misjoinder and nonjoinder. The basis for this interpretation is the comma found after the term "application," a comma conspicuously absent from section 256. Thus, our interpretation of section 256—which only requires lack of deceptive intent in nonjoinder cases—differs from our interpretation of section 116, which also requires lack of deceptive intent in misjoinder cases. At the same time, the pertinent legislative history suggests that sections 256 and 116 are to be interpreted in a uniform manner. *See* S.Rep. No. 82–1979, at 150 (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2401 (stating that "[s]ection 256 is a new section in the law that is correlated with section 116...."); H.R.Rep. No. 97–542, at 10 (1982), *reprinted in* 1982 U.S.C.C.A.N. 765, 774 (stating that "[s]ection 256 of title 35 ... is a companion to section 116...."). However, to the extent that the language of sections 116 and 256 lead to different and, arguably, inconsistent results, a situation exists which only Congress has the power to resolve. *See In re Mark Indus.*, 751 F.2d 1219, 1224, 224 U.S.P.Q. 521, 524 (Fed.Cir. 1984) ("A statute is by definition the law to be followed—not disregarded, effectively repealed, rewritten, or overruled (unless unconstitutional)—in the federal courts."); *Newport News Shipbuilding & Dry Dock Co. v. Garrett*, 6 F.3d 1547, 1558 (Fed.Cir.1993) ("This court is empowered to rewrite neither statutes nor regulations, however unwise, nor does it have the information base nor expertise to do so effectively.").

In sum, to avoid redundancy and give meaning to the entire section, this court construes the term "error" to extend to mistakes, whether deceptive and "dishonest" or merely uninformed and "honest." Therefore, section 256 allows deletion of a misjoined inventor whether that error occurred by deception or by innocent mistake. As well, the section allows addition of an unnamed actual inventor, but this error of nonjoinder cannot betray any deceptive intent by that inventor. In other words, the statute allows correction in all misjoinder cases featuring an error and in those nonjoinder cases where the unnamed inventor is free of deceptive intent.

■ In this case, the district court erred by limiting the word "error" to honest mistakes. Under this incorrect reading, the district court barred any action to correct an alleged misjoinder which included an allegation of deception. Because Stark alleges that AMI deliberately deceived him and intentionally excluded him from his own invention, the district court concluded that these state law allegations could not coexist with a section 256 correction claim. Therefore, the district court ordered Stark to choose between pursuing his fraud-based state claims and his section 256 correction claim. In the event that that ruling prompts Stark to surrender his section 256 claim, AMI's alleged deception could serve as a shield against an action to correct the alleged fraud. Section 256 does not impose such a dilemma on a professed inventor who was potentially wronged by omission from a patent. Instead, under this court's reading of the statute, Stark receives at least the opportunity to prove both his status as an actual inventor and the error warranting correction of the patent.

This court notes as well that its reading of the statute is not likely to allow an avowedly deceptive inventive entity to correct a misjoinder without any penalty for its deception. This hypothetical situation would call on the Commissioner or a court to determine whether the listed inventive entity committed inequitable conduct in filing a false oath. *See* 35 U.S.C. § 115 (requiring that an applicant for a patent "shall make oath that he believes himself to be the original and first inventor"); *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227, 32 U.S.P.Q.2d 1915, 1918 (Fed.Cir.1994) (patent may be unenforceable

for inequitable conduct when any co-inventors are omitted with deceptive intent). The standards for inequitable conduct are not likely to permit enforcement of any patent procured by deceiving the United States Patent and Trademark Office (PTO). *See, e.g., Glaverbel Societe Anonyme v. Northlake Mktg. & Supply, Inc.,* 45 F.3d 1550, 1556–57, 33 U.S.P.Q.2d 1496, 1500 (Fed.Cir.1995).

The PTO's rules implementing section 256 also read the section in conjunction with rules governing inequitable conduct. Specifically, the PTO rule states:

> Whenever a patent is issued and it appears that the correct inventor or inventors were not named through error without deceptive intention on the part of the actual inventor or inventors, the Commissioner may ... issue a certificate naming only the actual inventor or inventors.

37 C.F.R. § 1.324 (1996). The PTO rule considers the deceptive intent of all actual inventors. While this approach exceeds the literal scope of section 256, it reaches the result of reading section 256 in conjunction with inequitable conduct standards. *See also* 1 Donald S. Chisum, *Patents* § 2.04[4][c] ("As between the named and omitted inventors, it would seem most logical to focus on the intentions of the true inventors, that is, the inventorship entity as it is sought to be corrected.").

Returning again to this case, Stark seeks to escape the taint of his alleged co-inventor's purported misconduct. Stark insists, that where his co-inventors have acted inequitably, the patent should be unenforceable only to the inventors who acted with deceptive intent. 37 C.F.R. § 1.56 (1996) precludes persons guilty of inequitable conduct from enforcing any rights under the patent. Stark argues that while AMI's inequitable conduct may preclude its enforcement of the patent, Stark remains eligible to enforce the patent. However, in this context, if unenforceable due to inequitable conduct, a patent may not be enforced even by "innocent" co-inventors. One bad apple spoils the entire barrel. Misdeeds of co-inventors, or even a patent attorney, can affect the property rights of an otherwise innocent individual. *See Molins PLC v. Textron, Inc.,* 48 F.3d 1172, 1178 n. 6,

33 U.S.P.Q.2d 1823, 1826 n. 6 (Fed.Cir.1995). In that case, Stark might retain a state law action against AMI, but the patent would not be enforceable by any party.

### III.

For the reasons stated above, this court holds that the district court's reading of section 256 as limited to cases where both named and unnamed inventors acted without deceptive intent is too restrictive. Section 256 merely precludes any deceptive intention in the inventor that seeks to be restored to a rightful place in the patent. Therefore, as to the '183 patent, section 256 allows complete substitution of inventors as long as the true inventors are without deceptive intent. As to the five remaining patents at issue, Stark alleges that AMI, the representative of certain co-inventors, exhibited deceptive intent in claiming sole inventorship. Stark's allegation does not preclude him from seeking correction of inventorship. While irrelevant to the question of correcting inventorship, Stark's allegations of fraud may (and this court stresses "may" because it has no factual findings to reach any conclusion) have implications under the inequitable conduct doctrine. Therefore, the judgment of the district court is reversed, and the case remanded for further proceedings in conformity with this opinion.

### COSTS

Each party shall bear its own costs.

*VACATED AND REMANDED.*

PLAGER, Circuit Judge, concurring in the result, but dissenting in the outcome.

I concur in the judgment that the decision of the district court should be vacated, and the matter remanded to that court for further proceedings. However, the further proceedings that I would have the court undertake differ dramatically from that of the panel majority. The panel majority applies to the judicial decision process the standards that the statute makes applicable only to the administrative process before the Commissioner of Patents and Trademarks. This is a misreading of the plain language of the

statute, and is an unwarranted intrusion into the equity powers of the district courts. I respectfully dissent from that reading.

### 1.

The panel majority assumes that the requirements spelled out in paragraph one of § 256 apply to a judicial proceeding, and therein as I shall demonstrate lies the error. If one makes that assumption, however, the reading the panel gives to the unfortunate phraseology of paragraph one at least has the virtue of literally following the statute. Thus it probably makes as much sense as the alternatives. In parsing this statutory language, it is worth noting that the terms sometimes used to describe what the statute is about, "misjoinder" and "nonjoinder," are less than precise. These terms themselves do not appear in the statute, but are used, as the panel does here, to describe what it is thought the statute addresses. However, as applied to any given situation, the terms may not accurately reveal the problem. For example, the argument raised by Dr. Stark is that he, not the named "inventors," should be the one named in the '183 patent. This is neither misjoinder nor nonjoinder, since he does not complain of having been wrongly joined or wrongly not joined. Rather, he wants to be substituted for the named "inventors." It is useful to bear these factual nuances in mind when considering how the statute is said to apply to a particular case.

### 2.

Whether the problem is an error in inclusion, exclusion, or substitution in the naming of an inventor, there are two routes a person can use to get the record of inventorship corrected: ministerial administrative correction by the Commissioner, and correction through a judicial proceeding. Section 256 discusses both; it reads:

§ 256 Correction of named inventor

Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Commissioner may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Commissioner shall issue a certificate accordingly.

35 U.S.C. § 256 (1994).

Note that the first paragraph of § 256 addresses the authority of the Commissioner to correct errors in the naming of inventors. It provides a summary administrative remedy, on limited terms, that did not previously exist. There is nothing in that first paragraph that states or even suggests any application to courts, or to the bases on which a court may correct an error in inventorship.

The second paragraph of § 256 contains two ideas. In the first sentence, Congress makes clear that when an error in inventorship is corrected pursuant to either the first or second paragraphs ("if it can be corrected as provided in this *section*") (emphasis added), the patent is not rendered invalid because of the original error. This was an important addition to the law of patents, and obviously was intended to apply whether the correction be by Commissioner or court.

The second idea in the second paragraph is that when a correction issue is brought before a *court*, the court may correct the error "on notice and hearing of all parties concerned." The statute does not specify, and thus leaves to traditional common law concepts of equity jurisprudence, the circumstances and terms on which a court may find correction warranted.

The panel majority assumes, without any support in the statute or in the legislative history, that somehow courts are constrained by the statutory requirements expressed in the first paragraph, a paragraph that expressly deals exclusively with the administrative remedy before the Commissioner.

There is no warrant for reading something into the statute that is not there, particularly when the effect of that reading is to constrain the equity powers of the district courts.

The incongruity of that reading becomes even more apparent when it is observed that one of the requirements contained in the first paragraph is that the application for correction that is submitted to the Commissioner must be joined by "all the parties and assignees," whereas this court has made clear that consent of all parties is not required for a court to order correction under § 256. *MCV, Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1570, 10 U.S.P.Q.2d 1287, 1289 (Fed.Cir.1989) ("In the event consensus is not attained, however, the second paragraph of section 256 permits redress in federal court."). The panel majority, to be logically consistent, must either conclude that contested inventorships cannot be heard by either the Commissioner or the courts, regardless of what *MCV* said, or that it has the power to pick and choose which parts of paragraph one are to apply to a court proceeding. I do not believe it has the latter power, and the former conclusion makes no sense to me.

Furthermore, the panel majority's attempt to find in the "such matter" phrase of the second paragraph a statutory incorporation of the first paragraph's requirements is unpersuasive. The referent of the phrase "such matter" in the second paragraph is clearly "[t]he error of omitting inventors or naming persons who are not inventors," the subject of the second paragraph, and not the constraints on the exercise of administrative discretion by the Commissioner imposed in the first paragraph.

This is a case of first impression in this court. A few other courts previously have made the same unsupported assumption, without any attempt to justify it. *See, e.g., Bemis v. Chevron Research Co.,* 599 F.2d 910, 203 U.S.P.Q. 123 (9th Cir.1979); *Dee v. Aukerman,* 625 F.Supp. 1427, 228 U.S.P.Q. 600 (S.D.Ohio 1986) (following *Bemis* ). In *Bemis,* the issue was whether the alleged true inventor could get the court to correct the inventorship stated in the patent by replacing the named inventor, alleged to have acted fraudulently in procuring the patent in his name, with plaintiff's name. The court, in a brief per curiam opinion, held that no correction of inventorship is possible under the statute unless "the acts giving rise to the need for amendment or correction be inadvertent." *Bemis,* 599 F.2d at 912, 203 U.S.P.Q. at 124. That is too sweeping a statement, as the panel decision itself demonstrates. Not surprisingly the *Bemis* court, without further analysis, considered the rule applicable to both Commissioner and courts.

On the other hand, the Fourth Circuit Court of Appeals, after thoroughly examining the issue, including the history of the statute, recognized that the remedy available through the courts is distinct from that available through the administrative process. *Iowa State Univ. Research Found., Inc. v. Sperry Rand Corp.,* 444 F.2d 406, 410, 170 U.S.P.Q. 374, 377 (4th Cir.1971) ("But when relief is sought in court, as allowed by the [now second] paragraph [of § 256], notice and an opportunity for all parties to be heard are the only requisites for judicial action that Congress expressly prescribed."). The Fourth Circuit is clearly correct. The panel majority's attempt to distinguish *Iowa State* is hardly persuasive. It consists in its entirety of a one-sentence criticism that the opinion did not address the substantive standards to be applied by district courts in correcting inventorship. Since that was not required to decide the case before them, the Circuit judges are to be commended, rather than castigated. The Fourth Circuit's decision is directly on point, and is well reasoned. Though it is not controlling precedent, it is a correct reading of the statute and thus it is guidance we would be well advised to follow.

### 3.

Finally, the panel majority opines on the relationship of correction of inventorship issues to inequitable conduct, and the possible consequences that might flow therefrom. As the panel majority itself seems to recognize, nothing in this interlocutory appeal raises those issues. They are simply not before us, and anything volunteered about them is little more than obiter dicta, and of no legal significance.

## CONCLUSION

I would vacate the decision of the district court, and remand the case to the court to grant plaintiff the judicial process to which the law entitles him.