**MARKETEL INTERNATIONAL, INC., a California Corporation, Plaintiff,**

v.

**PRICELINE.COM, a Delaware Corporation, Defendant.**

**No. C–99–0161 CAL.**

United States District Court, N.D. California.

Jan. 23, 2001.

Steven E. Shapiro, Peter B. Gelblum, Matt J. Railo, Mitchell Silberberg & Knupp LLP by Peter B. Gelblum, for Plaintiff Marketel International, Inc.

Raoul D. Kennedy, Sheryl C. Medeiros, Benjamin R. Ostapuk, Skadden, Arps, Slate, Meagher & Flom LLP by Raoul D. Kennedy, for Defendant Priceline.com, Inc.

## AMENDMENT TO DECISION GRANTING PARTIAL SUMMARY JUDGMENT

LEGGE, District Judge.

On December 5, 2000 the court granted partial summary judgment in favor of defendants. The court's decisions were not set out in a written order, but were stated in open court on the record of the reporter's transcript.

As a part of those decisions, the court ruled in favor of defendants on the inventorship claim (Count 5) on the ground that 35 U.S.C. section 256 does not authorize correction of inventorship when the named inventor acted with "deceptive intent" in securing inventor status. The court cited *General Electric Co. v. Brandon*, 25 U.S.P.Q.2d 1885, 1887 (N.D.N.Y.1992), *University of Colorado Foundation v. American Cyanamid*, 880 F.Supp. 1387, 1397–98 (D.Colo.1995) and *McMurray v. Harwood*, 870 F.Supp. 917, 919–20 (E.D.Wis.1994) for the proposition that there must be a lack of deceptive intention on the part of the person originally named as the inventor in order for a section 256 correction to be ordered. *See also* ROBERT P. MERGES, PATENT LAW AND POLICY 821–24 (2d ed.1997); *Bemis v. Chevron Research Co.*, 599 F.2d 910, 912 (9th Cir.), *cert. denied*, 444 U.S. 966, 100 S.Ct. 454, 62 L.Ed.2d 378 (1979) (analyzing section 256, prior to its amendment in 1992, and concluding that it allows correction of inventorship only for innocent errors). Since plaintiff's entire case rests on allegations that the substance of defendants' '207 pat-

ent was "misappropriated" from plaintiff, which is anything but an innocent error, the court concluded that correction under section 256 was not authorized.

After the December 5, 2000 hearing but before judgment has been entered, defendants draw the court's attention to cases from the Federal Circuit that bring the continued validity of the above-cited authorities into question. *See University of Colorado Foundation, Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1374 (Fed. Cir.1999); *Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1555 (Fed.Cir.1997). Defendants request that the court supplement its December 5 ruling to address additional grounds for summary judgment on the inventorship claim.[1] The court did not originally address defendants' additional grounds because it regarded section 256 as an improper vehicle for inventorship correction.

The parties have fully briefed the inventorship claim. Plaintiff has been accorded the opportunity to file a sur-reply on the issues.

Good cause appearing, the court therefore amends its December 5 decision on inventorship as follows.

## I.

35 U.S.C. section 256 authorizes federal courts and the PTO to resolve inventorship contests involving issued patents. *See MCV, Inc. v. King–Seeley Thermos Co.*, 870 F.2d 1568, 1570 (Fed.Cir.1989). Section 256 allows not only the addition of an inventor, but the complete substitution of

one inventor for another, provided that the true inventor acted without deceptive intent. *See Stark v. Advanced Magnetics, Inc.*, 119 F.3d 1551, 1556 (Fed.Cir.1997). Because prior law required invalidation of a patent when nonjoinder or misjoinder were demonstrated, the Federal Circuit has described Section 256 as a "savings provision." *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1350 (Fed.Cir.1998). "If a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid." *Id.*

■ The inventor named in an issued patent is presumed to be the true inventor. *See Hess v. Advanced Cardiovascular Systems, Inc.*, 106 F.3d 976, 980 (Fed.Cir.), *cert. denied,* 520 U.S. 1277, 117 S.Ct. 2459, 138 L.Ed.2d 216 (1997). This presumption is a powerful one, because once a patent has issued there is a "strong temptation for people who consulted with the inventor and provided him with materials and advice, to reconstruct, so as to further their own position, the extent of their contribution to the conception of the invention." *Id.* Accordingly, "[t]he burden of showing misjoinder or nonjoinder of inventors is a heavy one and must be proved by clear and convincing evidence." *Id.* (quoting *Garrett Corp. v. United States*, 190 Ct.Cl. 858, 422 F.2d 874, 880 (1970)).

It is axiomatic that "[c]onception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227–28 (Fed.Cir.1994). "Conception is the formation in the mind of the inven-

---

**1.** Plaintiff objects on the basis that defendants' request constitutes a "thinly-veiled motion for reconsideration." Plaintiff asserts that defendants, as the prevailing parties, do not have standing to move for reconsideration and that defendants have not satisfied the requirements of Civil Local Rule 7–9. How-

ever, Local Rule 7–9 expressly allows "any party" to seek reconsideration. In any event, the court sees no reason to allow an incomplete and potentially erroneous decision to stand when judgment has not yet been entered. *See* Fed.R.Civ.P. 54(b). Plaintiff's objection is therefore overruled.

tor, of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice." *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1460 (Fed.Cir.1998) (citations and internal quotation marks omitted). "An idea is definite and permanent when the inventor has a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan he hopes to pursue." *Burroughs Wellcome,* 40 F.3d at 1228. "Thus facts relevant to inventorship are those showing the conception of the invention, for others may provide services in perfecting the invention conceived by another without becoming an 'inventor' by operation of law." *C.R. Bard, Inc. v. M3 Systems, Inc.,* 157 F.3d 1340, 1352 (Fed.Cir. 1998). The Federal Circuit has further explained that "the critical question for joint conception is who conceived... the subject matter of the claims at issue." *Ethicon,* 135 F.3d at 1460.

■ Correction of inventorship under section 256 is resolved by bench trial and is not submitted to a jury. *See Ethicon, Inc. v. United States Surgical Corp.,* 921 F.Supp. 901, 904–05 (D.Conn.1995), *aff'd by* 135 F.3d 1456 (Fed.Cir.1998).

■ To establish priority of invention, a party must show: (1) possession of every feature recited in the disputed claim; and (2) every limitation of the claim was known to the inventor at the time of alleged invention. *Kridl v. McCormick,* 105 F.3d 1446, 1449–50 (Fed.Cir.1997). To establish that the named inventor derived the invention from another, a party must show; (1) prior conception of the claimed subject matter, and (2) communication of the conception to the named inventor. *Price v. Symsek,* 988 F.2d 1187, 1190 (Fed.Cir. 1993). "While the ultimate question of whether a patentee derived an invention from another is one of fact, the determina-

tion of whether there was a prior conception is a question of law, which is based upon subsidiary factual findings." *Id.* (citations omitted).

■ "[A]n inventor's testimony respecting the facts surrounding a claim of derivation or priority of invention cannot, standing alone, rise to the level of clear and convincing proof." *Id.* at 1194. An alleged inventor must supply independent evidence to corroborate the essential aspects of his testimony. *See Woodland Trust v. Flowertree Nursery, Inc.,* 148 F.3d 1368, 1371 (Fed.Cir.1998). Whether the proffered evidence sufficiently corroborates the alleged inventor's testimony is evaluated under a "rule of reason" standard. *Price,* 988 F.2d at 1195 ("An evaluation of all pertinent evidence must be made so that a sound determination of the credibility of the [alleged] inventor's story may be reached."). Of course, "there need not be corroboration for every factual issue contested by the parties." *Ethicon,* 135 F.3d at 1464. Still "the [alleged] inventor's testimony requires corroboration before it can be considered," *Price,* 988 F.2d at 1195, and he "must provide clear and convincing evidence of supporting facts, including corroborating evidence." *C.R. Bard,* 157 F.3d at 1353. "It is well established that joint inventors cannot corroborate each others' testimony as to conception and reduction to practice." *Anderson v. Anderson,* 403 F.Supp. 834, 846 (D.D.C. 1975) (citing *Manny v. Garlick,* 30 C.C.P.A. 1008, 135 F.2d 757 (Cust. & Pat. App.1943)).

## II.

In the fifth count of its Third Amended Complaint ("TAC"), plaintiff claims that Marketel employees Perell, Martinez, Hughes–Hartogs and Weiss (the "alleged inventors") were the actual inventors of the business method and apparatus

claimed in the '207 patent of defendant Priceline. *See* TAC at 15:16–20. Plaintiff asserts that the alleged inventors explained the substance of their inventions to agents of defendants in confidential documents and conversations before defendants sought and received a patent on the disputed invention. *See id.* at 15:22–16:7.

Plaintiff's TAC prays for two alternative forms of relief with respect to Count 5:(1) an order that the Commissioner of Patents and Trademarks shall issue a certificate correcting inventorship in U.S. Patent No. 5,794,207 to add Perell, Martinez, Hughes–Hartogs and Weiss as inventors; or (2) an order that the Commissioner of Patents and Trademarks shall issue a certificate correcting inventorship in U.S. Patent No. 5,794,207 to name only Perell, Martinez, Hughes–Hartogs and Weiss as inventors. *See* TAC at 19:1–8.

### III

In support of their motion for summary judgment, defendants argue that: (1) plaintiff's asserted conception of the subject matter covered by the '207 patent is not corroborated; and (2) plaintiff's asserted communication of the invention to defendants is not corroborated. *See* Motion at 37:10–38:24. Since corroborating evidence is essential and not optional in inventorship correction cases, and since plaintiff bears the burden of proof on the issue at trial, defendants contend that there is a failure of proof by plaintiff. In such a situation, defendants are not obliged to offer evidence to prove a negative. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("[T]he burden on the moving party may be discharged by 'showing'—that is by pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.").

Plaintiff argues that "numerous Marketel documents corroborate Marketel witnesses' account of the process by which Marketel invented and developed the trade secrets misappropriated by defendants." Opposition at 18:19–20. But instead of presenting this evidence and relating it to the elements of the cause of action, plaintiff merely states that such evidence has been "described in great detail above and in the declarations of Messrs. Rappaport, Shapiro, and Martinez." *Id.* at 18:17–19.

 Plaintiff's showing is insufficient. When the moving party points to an absence of proof and the nonmoving party will bear the burden of proof on the issue at trial, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (quoting from Fed.R.Civ.P. 56(c) & (e)).

 Plaintiff has designated no specific facts. The previous pages of plaintiff's opposition brief attempt to draw parallels between the subject matter of defendants' '207 patent and plaintiff's alleged trade secrets. Even if the court were to agree that there is a "remarkable correlation" between defendants' patent claims and plaintiff's alleged trade secrets (Opposition at 2:7), this does not address, *inter alia:* (1) which of the particular claims of the patent were conceived by the alleged inventors; (2) the timing of the alleged inventors' purported conception of the patented subject matter; (3) communication of the alleged inventors' supposed inventions to defendants; or (4) the individual contributions, and therefore the basis for the claims to inventorship, of Perell, Martinez, Hughes–Hartogs and Weiss.

Nor do plaintiff's general references to the declarations of Rappaport, Shapiro and

Martinez carry the day. Plaintiff is obliged to direct the court to specific primary and corroborative evidence supporting the claims of priority and derivation. Moreover, to satisfy its burden of proof, plaintiff's evidence must be clear and convincing. The court is not obliged to sort through all of plaintiff's declarations to locate evidence on its behalf. Nor is the court obliged to divine which evidence is offered to support which aspects of plaintiff's inventorship claim. As the Ninth Circuit has recently held in similar circumstances: "A lawyer drafting an opposition to a summary judgment motion may easily show a judge, in the opposition, the evidence that the lawyer wants the judge to read. It is absurdly difficult for a judge to perform a search, unassisted by counsel, through the entire record, to look for such evidence." *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029–30 (9th Cir.2001). Given that the record on these summary judgment motions measures at least six feet in height, the concerns addressed by *Carmen* are very real here.

Perhaps realizing that it had failed to carry its burden in opposing summary judgment, plaintiff sought leave from the court to file a sur-reply. The court granted leave, and plaintiff filed a sur-reply.

In its sur-reply plaintiff maintains that it "presented detailed evidence in its opposition showing triable issues of material fact on the need to correct inventorship." Sur-Reply at 9:10–11. However, instead of identifying that evidence and showing how it substantiates *and* corroborates plaintiff's claims of priority and derivation, plaintiff merely string-cites to large portions of the declarations and exhibits of Rappaport, Martinez, Perell (notably missing from the opposition brief's recitation of relevant evidence), and Shapiro. *See id.* at 9:11–13. Again, the court is left to find for itself

how this mass of cited evidence specifically supports plaintiff's inventorship claim, whether the evidence is independently corroborated, and which elements of the claim it is offered to support. As the *Carmen* court observed, a district court is not required to "examine reams or file cabinets full of paper looking for genuine issues of fact, as though the judge were the adverse party's lawyer[.]" *Carmen, supra,* at 1031. Similarly, a judge is not required to guess at what the reams or file cabinets of paper are offered to prove.

For example, plaintiff's sur-reply directs the court to exhibits 1–33, 52–54, 55–58, and 60–62 of the Shapiro declaration. *See* Sur-Reply at 9:13. The bulk of these exhibits—which occupy three thick volumes—is material related to the application for and issuance of the '207, '169 and '639 patents. There is no explanation as to *how* this extensive material relates to plaintiff's claims of priority and derivation. There is no attempt to parse out the specific claims of the patents, which of the alleged inventors conceived of them, when this prior conception took place, how the substance of the claims was communicated to defendants, and which documents corroborate the essentials of plaintiff's claims to inventorship.

In a similar vein, plaintiff directs the court's attention to paragraphs 13 and 16–89 of the Rappaport declaration. Mr. Rappaport is a patent attorney and Vice President for Intellectual Property at Aurigin Systems, Inc. He opines that, based on his review of the pertinent documents, the " '207 Patent claims cover Marketel's achievement exactly" or, put another way, "the description of the Marketel system is sufficient and adequate under patent law to support and be read on the claims of the '207 patent." *Id.* at ¶ 16.

Like plaintiff's opposing briefs generally, Mr. Rappaport's declaration reads as if

it were offered to support a patent invalidity defense in an infringement case. There are no infringement claims or counterclaims in this case. The only question before the court on the fifth count is who, among the many candidates, qualifies legally as an inventor of the '207 patent's subject matter. As stated above, there is a strong presumption favoring the inventors named in the patent. Nonjoinder or misjoinder are not supported by the kind of detailed claim construction Mr. Rappaport's declaration offers. Nor can such *post facto* evidence be offered to corroborate priority or derivation. What plaintiff needs to offer is contemporaneous evidence—notebooks, non-inventor testimony, experimental prototypes—confirming that they conceived of the contested subject matter before the named inventors, and that they communicated its substance to the named inventors before patenting.

The declarations of Martinez and Perell, CEO and CFO of Marketel respectively, begin to flesh out the history of Marketel and its innovative business method plans from its inception as TransNational TelAssist Corporation in 1984–85. *See* Martinez Decl. at ¶¶ 2–21; Perell Decl. at ¶¶ 5–12. Exhibits 60–92 to the Martinez declaration mostly relate to private placement offerings, and Mr. Perell's declaration, at paragraphs 5–12, makes many assertions about how the ideas driving these offerings were communicated to Jaeckle, Walker and Brier. At first blush, this appears to be the type of evidence required.

On closer inspection, however, this is only the undeveloped germ of an inventorship correction claim. Mr. Martinez and Mr. Perell are allegedly co-inventors of the '207 patent. As such, their testimony cannot be credited without independent corroboration. More importantly, the private placement documents and alleged communications with Jaeckle, Walker and Brier admittedly concerned "short-term and long-term plans." Perell Decl. at ¶ 3. Without more, this does not establish the existence or communication of a "definite and permanent idea of the complete and operative invention" needed to support prior conception or derivation. It also does nothing to prove that all of the alleged inventors contributed significantly to the patented subject matter.

In sum, even when the court seeks to do the evidentiary work that should have done by plaintiff's attorneys, it cannot say that there is any genuine issue of material fact here. The testimony from two of the alleged inventors is insufficient to raise a triable issue, and there is insufficient corroborative evidence to substantiate their claims.

## IV

For the foregoing reasons, the court GRANTS summary judgment in favor of defendants on the fifth count, for inventorship correction.

IT IS SO ORDERED.

## *JUDGMENT*

The Court having granted summary judgment on Counts I, II, and V of the Third Amended Complaint filed in this action by plaintiff Marketel International, Inc. ("TAC"), and Count III of the TAC insofar as it was not based on a claim of false advertising; and plaintiff having dismissed with prejudice Count IV of the TAC and Count III of the TAC insofar as it was based on a claim of false advertising by a stipulation of all parties pursuant to Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, as this Court's final judgment in the above-cap-

tioned action, that all claims of the TAC are dismissed with prejudice.

### STIPULATION FOR DISMISSAL OF REMAINING CLAIMS

### STIPULATION OF DISMISSAL

WHEREAS, on December 5, 2000, the Court granted summary judgment on Counts I, II, and V of the Third Amended Complaint ("TAC") filed in this action by plaintiff Marketel International, Inc. ("Marketel"), and Count III of the TAC insofar as it was not based on a claim of false advertising, and dismissed Priceline Travel, Inc.

WHEREAS, on December 5, 2000, the Court denied summary judgment on Count IV of the TAC and Count III of the TAC insofar as it was based on a claim of false advertising, and these are the only claims currently remaining in this action,

WHEREAS Rule 41(a)(1)(ii) of the Federal Rules of Civil Procedure provides that "an action may be dismissed by the plaintiff without order of court ... by filing a stipulation of dismissal signed by all parties who have appeared in the action," and

WHEREAS plaintiff Marketel and defendant Priceline.com, Inc. ("Priceline") are the only remaining parties to the action,

NOW, THEREFORE, IT IS HEREBY STIPULATED BY AND BETWEEN THE PARTIES that: .

 1. Count IV of the TAC and the remaining aspects of Count III of the TAC, based on a claim of false advertising, are dismissed with prejudice; and

 2. the parties jointly request that the Court enter a final judgment in this matter, in the form attached hereto as Exhibit A, as soon as possible.